## Colesbury *vs.* Dart *et al.*

1. By a trust deed made in January, 1850, eighty-two town lots were conveyed in *fee simple* to a certain man, in trust for his wife, and for his children, born and to be born. The deed had a clause to this effect: "And for the more enlarged and beneficial administration of said trust, it is hereby declared that the said trustee shall have full power and authority to sell and convey the aforesaid property, or any part thereof, by deed or other sufficient instrument in writing duly executed under his hand and seal as trustee, whenever the same shall appear to him to be for the benefit of his wife and children, and so apply the proceeds of said sale as he shall deem most conducive to their interest." In December, 1875, with the knowledge and consent of three of his sons, then of full age, the trustee as such, by a deed of mortgage under his hand and seal, mortgaged two of said 'lots as security for four thousand dollars, money loaned by the mortgagee, giving also his promissory notes, as trustee, therefor. The three sons being engaged in a lumber business on their own account, and also in running a saw-mill belonging to the trust estate, used said money partly for their own separate benefit, and partly to produce a profit for the trust estate by operating the mill; but no profit was in fact produced. The trustee did not himself use any of the money, but assented to its use by his said sons, treating them as the real borrowers, and as authorized to control and apply it as they pleased:

   *Held*, that in equity the mortgage is binding, as against the three sons, absolutely, and that, as the trustee yielded to them the produce of the loan, the presumption is, in the absence of evidence to the contrary, that the amount was not in excess of their due share of the trust estate, and that the two lots mortgaged were not more in value than their equitable share of the property embraced in the trust deed, and that the trustee deemed the application of the money made by them, with his assent, a proper application under said deed—saving only, that as to any children of the trustee not parties to the bill now before the court, and as to any that may be hereafter born, the decree of foreclosure and sale shall be of no force or effect. This saving, however, will not prevent the decree from being conclusive

as to all the parties to the bill, the resort to equity having taken place at the instance of the beneficiaries of the trust, *in esse* when the bill was filed, (including the three sons), without making a tender of the money in question, or any part thereof, and no separate relief being prayed for by any of the complainants, as distinct from the common relief from the burden of the mortgage and the mortgage debt sought in behalf of all, and by the verdict of the jury denied.

2. By a second trust deed, made in December, 1852, to the same trustee in behalf of the same beneficiaries, conveying other realty, an express power to mortgage was given to the trustee, which power he exercised in 1875, by including in the mortgage deed above described a portion of said other realty, this incumbrance being for securing the same loan:

*Held*, that the power was sufficient, and that under the facts in evidence the jury were warranted in upholding the mortgage in respect to so much of the subject-matter thereof as the second trust deed covered.

3. The clause of the Code (§2335), which declares trustees unauthorized to create any lien upon the trust estate, except such liens as are given by law, does not nullify an express power to mortgage conferred by a trust deed made prior to the adoption of the Code.

4. Notice of the trust did not cast upon the mortgagee in the present case the duty of seeing to a different application of the money from that which was made; and the jury were warranted by the evidence in concluding that the mortgagee was without notice of any intention to divert the money from objects embraced within the trust.

5. The answer of one defendant, responsive to the charges in the bill, and contradicting, upon material points, the answer of another defendant, does not necessarily produce an equilibrium, so as to make the case turn on extrinsic evidence alone.

6. The court committed no error against the complainants. The verdict of the jury, in effect granting the prayer of the answer for a foreclosure of the mortgage as to all of the mortgaged premises, was correct; and the order of the court for a new trial was erroneous.

Equity. Trusts. Powers. Mortgage. Notice. Evidence. Before Judge PATE. Glynn Superior Court. May Term, 1878.

Eliza R. Dart and eight children, all of age, filed their bill against Clarinda H. Colesbury and Urbanus Dart, Sr., trustee, to enjoin the foreclosure of a certain mortgage executed by the trustee to his co-defendant, and to decree its cancellation. Mrs. Colesbury demurred to the bill, but

the demurrer was overruled. This judgment was affirmed by the supreme court. See 59 *Ga.*, 839. The defendant Dart, answered, admitting every material allegation. Mrs. Colesbury answered, denying such allegations, and praying the foreclosure of the mortgage. The facts presented by the pleadings and evidence as to the character of the trust deeds, the circumstances under which the mortgage was executed, etc., all sufficiently appear in the first two head-notes. The jury returned the following verdict:

"We, the jury, find a verdict for the defendants, and that the mortgage be foreclosed as to all the property named therein, for the amount due on the mortgage notes, with interest."

The complainants moved for a new trial upon the following, among other grounds:

1. Because the court refused to charge the jury "that a trustee has no authority under our statute to create a lien on trust property, or property belonging to the trust estate, and cannot delegate such power to others."

2. Because the court refused to charge the jury "that it is the duty of a party dealing with a trustee to see to the application of the purchase money, that it was used for the benefit of the trust estate, if the party has notice, actual or constructive, of the trust."

3. Because the court refused to charge "that it is the province of the jury to weigh the evidence, and if, in their opinion the evidence of U. Dart, trustee, contradicts that of Mrs. Colesbury in material points, the evidence of the one is equal to that of the other, and stands as an offset against the other; that the jury will then look to further testimony, if any, by which the scales will be turned."

4. Because the court refused to charge "that a trustee cannot create a lien upon trust property; that the law which was in force in this state when the mortgage at bar was made, forbids it."

5. Because the verdict was contrary to law, evidence and equity.

The court ordered a new trial, unless Mrs. Colesbury would abandon her foreclosure as against the two lots covered by the first trust deed. To this judgment she excepted.

In the bill of exceptions numerous other alleged errors were complained of in the instructions to the jury, and in refusals to charge, not deemed material here.

GOODYEAR & HARRIS, for plaintiff in error, cited 2 *Ga.*, 383; 6 *Ib.*, 324; 10 *Ib.*, 429; 14 *Ib.*, 55; 15 *Ib.*, 155; 30 *Ib.*, 560, 598; 37 *Ib.*, 194, 426, 94; 59 *Ib.*, 472; 2 Perry on Trusts, §§870, 849, 485; 53 *Ga.*, 209; 54 *Ib.*, 45.

WM. WILLIAMS; W. J. WILLIAMS, by HOKE SMITH; JNO. C. NICHOLS, for defendants, cited Code, §3378; 36 *Ga.*, 642; 48 *Ib.*, 367. Power to sell does not include power to mortgage. Perry on Trusts, 475; Hill on Trustees, 475; 1st Beav., 390; 16 *Ib.*, 400; 24 *Ib.*, 86; 29 *Ib.*, 137; 5 Hill, (N. Y.) 361; 38 *Ga.*, 391; 59 *Ib.*, 769; 2 *Ib.*, 404: 3 P. Wm., 9; 1 Watts, 385. Mortgage on trust estate. Code, §§2335, 3377.

BLECKLEY, Justice.

1. We are in equity, the *forum* chosen by the beneficiaries of the trust. They unite in praying for a common relief. They seek to shake off the mortgage debt from the trust property. They make no tender, but stand on the supposed legal incapacity of the trustee to incumber the trust estate by mortgage, especially as the money borrowed went to the use, not of that estate generally, but of three of the nine beneficiaries. We need not rule that the power to sell and convey, contained in the deed of 1850, included, by implication, a power to mortgage. There is broader and better ground in the facts of the case, upon which to rest our decision. Three of the beneficiaries of the trust got the money, through the trustee, by means of the mortgage. There were eighty-two town lots embraced in the deed of

1850, and but two of these were put in the mortgage. There is no evidence in the record as to the relative value of these two as compared with the other eighty. Assume them to be average lots, and they would constitute less than one-fortieth part of the trust estate covered by this one deed. The three sons who received and used the money were one-third of the whole number of beneficiaries in being when the bill was filed, and it does not appear that any have been born since. These three were of full age when the money was borrowed, and were therefore competent to consent to the mortgage, so far as their interest in the trust property was concerned. The deed gave the trustee power to sell and convey the whole or any part of the property, whenever it might appear to him to be for the benefit of his wife and children, and so to apply the proceeds of the sale as deemed by him most conducive to their interest. Instead of pursuing the exact terms of the power contained in the deed, the trustee raised money by note and mortgage, and suffered this money to be taken and appropriated by three of the beneficiaries of the trust, who used it partly for their own separate benefit, and partly in an unsuccessful effort to produce a profit for the trust by operating a saw-mill belonging to the trust estate. In the absence of evidence to the contrary, it ought to be presumed that the amount was not in excess of their due share of the trust estate, and that the two town lots were not more in value than their equitable share of the property embraced in the deed of 1850. As the trustee, instead of keeping the money and using or investing it, permitted these beneficiaries to take it, he probably deemed this a proper application of it under the trust deed. And that it was an improper application does not appear. The best interest, on the whole, of a man's wife and children may possibly be subserved by permitting his sons, after they arrive at majority, to receive and manage their proportion of the property which he holds for the family in trust. Certainly, the sons, themselves, who got the money and spent it, could not complain; and

in order for their co-beneficiaries to complain with effect, there should be affirmative evidence that they were injured. In this instance, all the co-beneficiaries who were parties to the bill have had an opportunity to show injury, and have failed to do it. For aught that appears, the three sons may, on an equal division, be entitled to much more of the trust property than the lots in question, or the money which was raised on the mortgage. There is no hint that they are entitled to less. It may be that more beneficiaries have been born since the filing of the bill, or may hereafter be born ; if so, they should not and will not be bound by the decree, as to the two lots ; for the like opportunity of showing injury, as the others have enjoyed, will be due to them, and can be accorded in the future. All the complainants in the bill, having had their day in court, can be and are to be bound absolutely.

2, 3. The deed of 1852, contained an express power to mortgage. The Code did not cut away the power by section 2335, for the simple reason that the power was older than the Code, and the latter was not intended to have any retroactive effect. Possibly other reasons might be adduced, but as they are not needed, they need not be sought for.

4. The borrowed money went to three of the beneficiaries of the trust, with the trustee's consent. Notice of the trust did not cast upon the lender and mortgagee the duty of seeing to a more strict application of the money to the purposes of the trust. The apparent magnitude of the trust estate, and the fact that the three beneficiaries were of full age, have already been noticed. On an enlarged view of the objects of the trust, it could be held nakedly that the application of the money was within the objects ; but even if it was somewhat aside from them, the money appeared to be going in the right direction when it reached the hands of the adult sons of the trustee, who were working or about to work a saw-mill belonging to the trust estate, and who wanted the money for use in that connection, the trustee not objecting. The jury were warranted in inferring from

the evidence that the mortgagee was without notice of any intention to divert the money from the objects embraced within the scope of the trust, even on a strict and narrow view of such objects.

5. As we understand the record, the evidence of the two defendants in the bill, which the complainants wanted to dispose of on the principle of setting off one defendant's evidence against that of the other, was contained in their respective answers responsive to the charges of the bill. The mortgagee had answered favorably to herself, and the · trustee had answered favorably to his wife, sons and daughters. The complainants wanted a charge from the bench which would force the jury to give the trustee as much credit as the mortgagee. It is even doubtful whether the trustee's answer was evidence at all against the mortgagee, as to relief which would affect her without affecting him. The trustee had no direct interest in favor of upholding the mortgage, and it is plain that he had no inclination to uphold it. He was a defendant in sympathy with the complainants—a Greek in the Trojan camp. But concede that his answer was evidence where it conflicted with hers, why should the jury be bound to treat both as equally credible? There is neither rule nor reason that so requires.

6. We have disposed of all questions of any moment which the case presents. Without going in detail into the more minute points, we may hold, in general terms, that the court committed on the trial no error against the complainants. The jury found correctly, and the order for a new trial on terms was erroneous.

Judgment reversed.