| 68  | 255 |
| 108 | 515 |

WATERMAN ET AL. v. BALDWIN, TRUSTEE, ET AL.

1. **Assignment for Benefit of Creditors**: MORTGAGE OF REAL ESTATE BY ASSIGNEE: ASSIGNOR AND HEIRS CANNOT OBJECT. If the conveyance under consideration in this case (see opinion) be regarded, as between the parties thereto and the creditors of the grantor, as a general assignment for the benefit of creditors, still, since the conveyance vests in the grantee the legal title, in trust, for the purpose of raising money to pay debts, a mortgage made by the grantee in trust, to raise money for the redemption of the real estate from a judicial sale, cannot be defeated by the grantor or his heirs. If anyone can be heard to object to such disposition of the property, it is the creditors, for whose benefit the deed, or assignment, was made; and they are not objecting in this case.

ADAMS, CH. J., *dissenting*.

2. **Power of Trustee:** DISPOSITION OF REAL ESTATE TO PAY DEBTS: RULE OF CONSTRUCTION: EXAMPLE. In construing a power, it is proper, in ascertaining the object and intent of the maker, to consider not only the words used in the instrument, but also the circumstances surrounding the maker at the time of its execution. So, where the vital power conferred upon the trustee was to "sell and dispose" of the property to pay the debts of the grantors, *held* that the language was broad enough to cover a disposition of the property by mortgage, and that such disposition of it was justifiable, and that the mortgage would be enforced, where it was given to borrow money to redeem the property from a judicial sale, at a time when an absolute sale of the equity of redemption by the trustee could not, on account of the depression of values, have been made without great sacrifice.

3. **Homestead:** CONVEYANCE: DESCRIPTION. Where a conveyance was of *all* the real estate at the time owned by the grantors, (husband and wife,) without any more particular description; *held* that it carried the homestead at that time owned and occupied by them. (Compare *Babcock v. Hoey*, 11 Iowa, 375.)

4. **Usury:** EVIDENCE OF: MONEY RECEIVED AFTER DATE OF NOTES. Where the notes and mortgage were dated January 1, 1880, and bore interest at ten per cent, but the money was not received until about March 1, following, but there was no evidence as to the cause of the delay, *held* that a corrupt agreement for usury could not be presumed.

*Appeal from Howard Circuit Court.*

TUESDAY, FEBRUARY 2.

ACTION to foreclose two mortgages.    Decree for the plaintiffs, and the defendants appeal.

*Davison & Lane*, for appellants.

*H. T. Reed*, for appellees.

SEEVERS, J.—Cyrus and Elizabeth Baldwin, husband and wife, in January, 1879, executed to Ebenezer Baldwin a conveyance, which recites that said Cyrus and Elizabeth are indebted to divers persons in considerable sums of money, which they at present are unable to pay in full, and they are desirous to convey all their property for the benefit of all their creditors, without preference or priority. "Now, the

said Cyrus and Elizabeth, in consideration of the premises, and of one dollar paid to them by Ebenezer Baldwin, hereby sell, assign, grant and convey unto the said Ebenezer all their lands, tenements, hereditaments, goods, chattels, property and choses in action of every name, nature and description,   *   *   *   to have and to hold the same unto said Ebenezer in trust, to sell and dispose of said real and personal estate, and to collect the said choses in action,   *   *   *   in trust, to dispose of the proceeds   *   *   *   in the manner following:   (1) To pay the costs and charges of these presents, and the expenses of executing the trusts declared and set forth herein; and (2) to distribute and pay the remainder of the proceeds to all the creditors of the said Cyrus and Elizabeth   *   *   *   *pro rata*,   *   *   *   and the residue to be paid to said Cyrus and Elizabeth."

Afterwards Ebenezer Baldwin, as trustee for Cyrus and Elizabeth Baldwin, executed the mortgages sought to be foreclosed. After the execution of the mortgages Cyrus Baldwin died, and the defendants, in addition to the trustee and Elizabeth Baldwin, are heirs at law of Cyrus and Elizabeth Baldwin.

I.   It is insisted that the conveyance, trust deed, or whatever it may be designated, is in fact a general assignment under the statute for the benefit of creditors, and

**1. ASSIGN- MENT for benefit of creditors: mortgage of real estate by assignee: assignor and heirs cannot object.** therefore that the mortgage is void for want of power in Ebenezer Baldwin to execute it.   Counsel for the plaintiffs, while not conceding that the conveyance is a general assignment, insist, in substance, that, if such concession be made as between the parties thereto and the creditors of the parties executing it, yet that it is valid as a conveyance of the legal title to the property as between the parties; and that, as creditors are not objecting, the power to execute the mortgage for the purposes hereafter stated existed, under the conveyance and we must say that we think the position of the plaintiffs must be sustained.

An assignment under the statute is for the benefit of cred-

itors.   Their consent thereto is conclusively presumed; and
no creditor can obtain any advantage, either by attachment or
the levy of an execution.   The legal title to the property
passes from the assignor to the assignee, and it must ordi-
narily be sold and the proceeds applied as provided by statute.
If the proceeds are more than sufficient to pay expenses and
the creditors, such remainder, it will be conceded, belongs to
the assignor.   He therefore is interested, it may be further
conceded, in having the proceeds applied to the purposes con-
templated in the assignment.   This, however, is, we appre-
hend, the extent of his interest.   Of course, if it turns out that
there are no creditors, or if there are, and it is clearly demon-
strated that all of them decline to prove up their claims, as
provided by statute, or otherwise release the assignment made
for their benefit, it may be conceded that the assignor could
compel the assignee to reconvey.   The assignor, however, can-
not be-permitted to say that the assignment is void, or in
any manner avoid it, without showing that the purposes for
which it was executed have been accomplished.   In other
words, an assignment under the statute is made for the bene-
fit of creditors; and, if the money to pay them is procured by
a pledge or mortgage of the property, the assignor has no
right to complain, provided, as between him-and the assignee,
such power under the assignment existed, and the proceeds
thereof have been properly applied, and it was for the interest
of the assignor that the money should be so procured by a
mortgage instead of by a sale of the property.   As between
the parties to this action, the vital question we conceive to
be is whether, under the conveyance or general assignment,
conceding it to be such, Ebenezer Baldwin had the power and
authority to execute the mortgages.   To this question we
turn our attention, to a proper understanding of which cer-
tain practically conceded facts must be stated.

II.   The only property which passed to Ebenezer Baldwin
under the conveyance from Cyrus Baldwin and wife, in con-

2. POWER of
trustee: dis-
position of
real estate to
pay debts:
rule of con-
struction: ex-
ample.

troversy in this action, is certain real estate. What became of the other property embraced in the conveyance, if any there was, the record substantially fails to disclose. Cyrus and Elizabeth Baldwin had, prior to the conveyance to Ebenezer Baldwin, executed a mortgage on the real estate to the Northwestern Mutual Life Insurance Company. This mortgage had been foreclosed, the real estate sold, and the period when the right to redeem would expire was rapidly approaching, when the mortgages sought to be foreclosed were executed, and which were executed in consideration of money loaned Ebenezer Baldwin as trustee, and the same was used by him to redeem the real estate sold under the foreclosure of the prior mortgage. More than one witness on the part of the plaintiffs testify that at the time Ebenezer Baldwin executed the mortgage, and prior thereto, real estate, owing to a failure of crops, was very much depressed, and could not be readily sold at a fair price. As there is no evidence contradictory to this, the fact sought to be proved thereby must be regarded as established.

The plaintiffs contend that both Cyrus and Elizabeth Baldwin had express knowledge of the execution and purpose of the mortgage to the plaintiffs, and the defendants insist that this has not been established by competent evidence. For the purposes of the opinion, it will be conceded that they did not have such knowledge. But the mortgage was executed in January, 1880, and recorded in March thereafter. From the latter period it is probable that they and the defendants should be charged with constructive notice of the execution of the mortgage, and we are not advised from the record before us that its validity was denied until the answer in this action was filed, in September, 1883. The plaintiffs insist that the conveyance or assignment vested the legal title to the real estate in the trustee or assignee for the purposes therein contemplated. We do not understand that the appellants controvert this proposition. There is a recognized difference

between a conveyance which vests the legal title in a trustee for the purpose of raising a fund to pay debts, and a conveyance to a trustee for the purpose of securing a debt. In the former the title will pass, although the conveyance by the trustee is in violation of the conditions of the trust; while in the latter the title will not pass by such a conveyance, unless the terms and conditions of the trust have been at least substantially pursued. *Woodruff v. Robb,* 19 Ohio, 212; *Carrington v. Goddin,* 12 Grat., 601; *Newman v. Samuels,* 17 Iowa, 528.

But we are not prepared to say, as between these parties, that the terms and conditions of the trust were in any respect violated. The trustee was authorized to " sell and dispose of the property for the purpose of paying debts. To dispose of property implies some other disposition of it than a sale. But " a power for trustees to sell will authorize a mortgage by them, which is a conditional sale, whenever the object of the trust will be answered by a mortgage, as, for instance, where the trust is to pay debts or raise portions." *Loebenthal v. Raliegh,* 36 N. J. Eq., 169. See, also, *Ball v. Harris,* 4 Mylne & C., 264; *Campbell v. Law,* 9 Barb., 585; *Steifel v. Clark,* 9 Baxt., 466; *Duval's Appeal,* 38 Pa. St., 112; *Penn Life Ins. Co. v. Austin,* 42 Id., 257; *Wayne v. Myddleton,* 2 Ga., 383; *Colesbury v. Dart,* 61 Ga., 620.

In the present case the vital power conferred upon the trustee was to " sell and dispose" of the property to pay the debts of the grantors. It is not a mere power to sell, as in *Bloomer v. Waldron,* 3 Hill, 361; but a charge on real estate was created. The object of the power was to raise or procure money to pay debts, and was coupled with an interest in the trustee, for the reason that his costs and charges for executing the trust were required to be paid. The object of the power being to raise money to pay debts, it seems to us that if such object could be better accomplished by a mortgage than a sale, and the terms of the power are not thereby violated, and the interest of the parties is thereby subserved,

the former course instead of the latter should be adopted. Clearly, a mortgage is not prohibited, and it should be regarded as a conditional sale. It is, however, something less than an absolute sale, and usually, at least, the greater includes the less. In construing the power, it is possible that regard should alone be had to the words therein used. Conceding this to be so, the object of the grantors clearly was to raise money to pay debts. Now, how could this be best accomplished? Clearly by a mortgage. The land was not what could be properly called saleable. The evidence satisfies us that what would be deemed a fair price could not have been procured. The time for redemption was near, and a sale, to have been effectual to prevent the title from passing to another, must have been made for cash. In construing a power, we think it is proper to ascertain the object and intent of the maker, not only by a consideration of the words used in the instrument, but the circumstances surrounding the party at the time it was executed should also be taken into consideration. It is said by counsel for the appellants that in some of the cases heretofore cited the power was created by a will, but this we think can make no difference where the object to be accomplished is substantially the same. In other words, it is immaterial how the power is created.

It is said that the homestead of Cyrus and Elizabeth Baldwin was included in the property conveyed to the trustee, and that, as the instrument does not expressly stipulate that it should be sold, therefore the mortgage executed by the trustee did not create a valid incumbrance on the homestead. The real estate is not described, and yet the title to the real estate at that time owned by the grantors undoubtedly passed to the trustee, including the homestead. It is not essential, under Code, § 1993, that the homestead should be specially described as such, or that the conveyance should in express terms contain a stipulation that the homestead was conveyed or should be sold. It is sufficient that the piece or parcel of land constituting the homestead is

3. HOMESTEAD: conveyance : description.

included in the conveyance or mortgage containing the usual provisions. *Babcock v. Hoey*, 11 Iowa, 375.

III. It is claimed that the mortgage executed to the plaintiffs is usurious. The notes secured by the mortgage bear ten per cent interest from their date, and they were dated January 1, 1880, and the evidence shows that the loan was negotiated and made at that time. The money, however, was not received by the mortgagor until about the first day of March following. There is no evidence which tends to show the cause of this delay. The mortgagees resided in Illinois, and whether they placed the money in the hands of some one for the mortgagor at the time the mortgage was executed, to be delivered to him when proper abstracts were furnished, does not appear. There is no evidence which tends to show a corrupt agreement on the part of any one to give or accept more than legal interest. We are unwilling to presume such an agreement from the facts above stated. On the contrary, we think the presumption should be indulged that the delay was caused by some lawful and sufficient reason.

It is suggested that a personal judgment was rendered against three of the defendants, who did not obligate themselves to pay the money secured by the mortgage. In our opinion the decree cannot and should not be so construed.

For the reasons stated the decree of the circuit court must be

AFFIRMED.

ADAMS, CH. J., (*dissenting.*) I think that Ebenezer Baldwin is merely assignee under an assignment for the benefit of creditors, and had no power to charge the land with a mortgage.