# Weller D. Bishopp v. Chauncey J. Blair, Henry A. Knott, Charles G. Lewis et al.

1. USURY—*Penalty in This State.*—Where a person enters into a contract to receive a greater rate of interest than the rate allowed by law, upon any contract, verbal or written, he forfeits the whole of the interest contracted to be received and can only recover the principal sum due.

2. SAME—*Must Be Conclusive.*—In order to sustain the charge of usury, the statute being highly penal in its nature, the evidence must be satisfactory and clear.

3. SAME—*There Must Be a Contract.*—In order to establish a violation of the statute of usury there must be a contract to receive a greater rate of interest than that allowed by law.

4. SAME—*A Corrupt Intent Necessary.*—An unlawful and corrupt intent is the very essence of a usurious transaction.

5. CHANCERY PRACTICE—*Exceptions to a Master's Report Must Be Certain.*—An exception to a master's report must be sufficiently certain to enable the court to know definitely and certainly the matter to which it refers.

**Bill to Foreclose a Trust Deed.**—Appeal from the Superior Court of Cook County; the Hon. FARLIN Q. BALL, Judge, presiding. Heard in this court at the October term, 1899. Affirmed in part and reversed in part and remanded with directions. Opinion filed June 14, 1900. Rehearing denied July 9, 1900.

**Statement by the Court.**—February 21, 1898, the appellee Blair and Henry A. Knott as trustee, filed their bill in the Superior Court of Cook County against appellant Henry A. Knott, individually, and others, and also the unknown owner or owners of four promissory notes made by appellant, dated November 20, 1894, payable to the order of the maker and by him indorsed, three for the sum of $500 each, due in six, twelve and eighteen months, respectively, after the date thereof, and one for $1,000, due in two years after the date thereof, with interest until maturity at seven per cent per annum, payable on the 20th day of May and November of each year, and of ten interest notes dated said 20th day of November, 1894, made by appellant to his own order and by him indorsed; all of said notes being secured by a trust deed from appellant to the Northern Trust Co.,

dated November 20, 1894, and recorded November 24, 1894, in the recorder's office of Cook county, giving the book and page of record and covering the same real estate in the trust deed sought to be foreclosed by the bill.   The bill seeks a foreclosure of a trust deed, dated November 10, 1891, made by appellant, covering lots 1 to 5 and the south 9½ feet of lot 6 in Bishopp's subdivision in Chicago, Cook county, Illinois, securing the payment of $30,000, as evidenced by two notes made by appellant, payable to his own order and by him indorsed, one for the sum of $2,500, due in two years, and the other for $27,500, due in five years after date, and each bearing interest at the rate of six per cent per annum until due and seven per cent per annum thereafter, and alleges default in payment of the note for $27,500, of which it is alleged the appellee Blair is the legal owner and holder; but that the $2,500 note had been paid.

Appellant answered the bill, admitting the execution of the two notes secured by the trust deed sought to be foreclosed and the execution of the trust deed by him, but alleges that he was not indebted to the appellee Blair the amount claimed, that appellant had never received more than $27,309.85 on said notes and trust deed, that he had repaid on that amount $11,264.82, that the transaction was usurious, and set up the statutes of the State against usury as a defense to the claim, admitting, however, that he was indebted upon the note in question $16,045.03.

Henry A. Knott and Charles G. Lewis, also a defendant, answered the bill, neither admitting nor denying its allegations, and alleging that they are the owners of the four notes dated November 20, 1894, being the same notes described in the bill as being held by unknown owners, under which title they were made parties defendant.   They also set up a trust deed securing the last mentioned notes, covering the same premises as the trust deed sought to be foreclosed, claiming that there was due to them on said four notes the sum of $2,289.95 and $200 solicitors' fees.   Replications were filed to the respective answers.

It is provided by the trust deed securing the $30,000 that the maker should insure the buildings on the premises conveyed against loss or damage by fire in the fair insurable value of the buildings, and cause the same to be made payable to the trustee in case of loss, and deliver to him the policies for such insurance as soon as it should be effected, and in case of refusal or neglect so to do, then the trustee or the holder of any one of the notes might at his option procure such insurance, and all moneys paid for such purpose, with interest at seven per cent per annum, should become so much additional indebtedness secured by said trust deed.

It is also provided by said trust deed that in case of its foreclosure, wherein the trustee or the holders of said notes or any of them should be made parties by reason of the deed, the reasonable fees and charges of all persons so being or made parties, their attorneys and solicitors, for services in such suit, should be a further lien and charge upon said premises conveyed by the deed, and should become so much additional indebtedness secured thereby.

In the trust deed securing the notes claimed to be owned by the defendants, Knott and Lewis, there is a similar provision as to attorneys' and solicitors' fees of persons made parties to any suit or proceeding by reason of that deed, the same as in the trust deed sought to be foreclosed.

After issues made, the cause was referred to a master to take proof and report the same with his opinion upon the law and evidence; and thereafter, on November 12, 1898, the master having taken such proofs, filed the same, together with his report thereon and the objections of appellant and the appellees Knott and Lewis, thereto, which were ordered to stand as exceptions.

After the filing of the master's report the bill, which alleged that appellant was indebted to appellee Blair $30,000 for money loaned, and made and delivered the said two notes, aggregating that amount, to Blair, was amended, so that, as amended, it charged that appellant was indebted to Knott, Tuttle & Lewis $30,000 for money loaned, and made and delivered said notes, aggregating that amount, to

Henry A. Knott, Emerson B. Tuttle and Charles G. Lewis, copartners as Knott, Tuttle & Lewis.

Also, during the hearing before the master, as well as after the filing of the master's report and the amendment of the bill, appellant filed amended answers, the first of which sets up in substance that the claim of Knott and Lewis made by their answer is a part of $5,000 covered by a trust deed extorted by complainant from appellant May 10, 1892, which he signed in order to get the remainder of what was coming to him on the $30,000 notes and trust deed, and alleging that such claim of Knott and Lewis was only pretended, and made as a cover for usurious interest by complainant Blair on said $5,000 loan on May 10, 1892; that the $5,000 loan was usurious, and that the present claim of Knott and Lewis upon the notes claimed to be held by them was a mere renewal of the $5,000 loan, setting up the details of such usurious claim, and alleging that in fact there was only due to Knott and Lewis the sum of $225.27. The last amended answer sets out, with much detail and prolixity, appellant's defense of usury, the substance of which may be stated as follows:

That appellant had begun the erection about October 15, 1891, of an apartment building upon the premises in question, and applied to the firm of Knott, Tuttle & Lewis for a loan of $30,000 upon said premises, in order to complete the building; that said firm pretended that they had a client who would make the loan, but that he would insist upon $2\frac{1}{2}$ per cent commissions, attorney's fees for examining the abstract of title, and moneys to pay insurance, and accordingly, November 10, 1891, appellant made a written application for such loan, with the understanding that he would be charged interest upon the money only from the day the several amounts of money he might require on the loan might actually be paid over to appellant; that Knott pretended it was necessary for appellant to get the money; that he should also sign notes to the amount of $30,000 and a trust deed upon the premises in question to secure the same; that all the statements of Knott with regard to said applica-

tion and its various provisions were false and fraudulent, and were made for the purpose of a cloak or cover for usurious interest on any money which appellant might subsequently obtain from Knott's firm; that appellant, believing Knott's statements, signed such an application, and also the notes and trust deed to secure the loan; that December 2, 1891, Knott, Tuttle and Lewis voluntarily abandoned the application of November 10, 1891, but they neglected to cancel or destroy it, and after so abandoning it they paid over to appellant voluntarily, at different times, the total sum of $20,000, giving dates and amounts, and on May 10, 1892, when appellant was entitled to receive the balance of the loan, he applied to Knott for another $5,000, which the latter refused to pay, and fraudulently pretended that said Blair had directed them not to pay over to appellant any more of said loan unless he would permit them to retain the sum of $2,500 to cover commissions, attorney's fees and insurance, provided for by the application of November 10, 1891, and interest amounting to $540, which Blair claimed to be due from appellant on a former loan of the latter from Blair, and in addition thereto to make a second loan for $5,000 at seven per cent interest per annum and $250 to Knott's firm for commissions; that appellant protested to Knott against such unlawful and usurious demand, but he persisted, and appellant did make an application for a new loan upon the terms required by Knott, the same to be secured by a second trust deed upon a part of the same premises covered by the first, and other property, setting out in minute detail the provisions of said second loan application; that Knott's firm, after obtaining from appellant the second application, which it is alleged superseded and took the place of the former one, still neglected to cancel the first application; that thereafter appellant, feeling himself powerless in the hands of Knott's firm, was obliged to and did accept the sum of $3,559.85 as the balance due him on said two loans, aggregationg $35,000, and submitted to usurious and unlawful charges for interest, attorney's fees, commissions and insurance, aggregating the total sum of

$2,137.50; that the two applications, resulting in the said two loans, all constituted one continuous transaction, and was usurious and in violation of the statute of this State in that respect, setting up the same; that appellant paid the principal sum of $1,000 on the loan of $5,000, $2,500 on said loan of $30,000, and various sums, specifying the same, as usurious interest on both said loans from time to time; that on November 20, 1894, appellant renewed $4,000 of said $5,000 loan, making such renewal agreement with the defendants, Knott and Lewis, who requested and insisted upon $80 commission as a condition of such renewal, and for the purpose of securing this $4,000 renewal, appellant made his notes, three for the sum of $500 each, due respectively in six, twelve and eighteen months, and one note for $1,000, due in two years, all with interest at seven per cent per annum, and secured the same by a trust deed on a part of the premises here in question, and still another note of $1,500, due in one year, with interest at seven per cent per annum, which last note was secured by a trust deed upon premises not now in question, and that he delivered said five notes and trust deeds to the defendants, Knott and Lewis, who were then doing business as Knott, Lewis & Co.; that appellant paid said $80 commissions, and thereafter also paid the first of said notes of $500, and also various sums from time to time thereafter, specifying the same, so that there was left as a balance due upon said $5,000 loan and its renewal only the sum of $255.27, and on said $30,000 loan only the sum of $16,380.63; that appellant pleaded the statutes of this State as to usury against the claim of said Knott and Lewis.

The answer also denies that appellant was indebted to the firm of Knott, Tuttle & Lewis for money loaned to the sum of $30,000, or any sum whatsoever, and that the said Blair was at the time of the filing of the bill the legal owner and holder of the principal note of $27,500, and avers that said note was held and owned by Knott, Tuttle & Lewis until May 18, 1892, when they, with the intent of disposing of said usurious loan for the purpose of evading the

penalty of usury thereon, negotiated a sale of said note, together with the $2,500 note, secured by the same trust deed, to Harriet B. Borland, and that the negotiation of such sale was made by said firm with the complainant Blair as agent of said Borland, and that said Borland is now the legal owner and holder of said note and trust deed. Replication to this amended answer was filed by complainants.

The decree of the court recites that the cause came on to be heard upon the pleadings, specifying them, the report of the master and exceptions thereto, and "proofs and exhibits introduced in evidence before said master," and overrules the exceptions, except appellant's third, relating to insurance rebate, which was allowed to the amount of $67.50, and appellant's seventeenth exception, which was allowed to the amount of $243.72, and in all other respects approves and confirms the master's report.

The decree finds the making and delivery of the two notes of $30,000 by appellant to Knott, Tuttle & Lewis substantially as alleged in the bill, and that interest coupons were also made to evidence the semi-annual interest thereon, specifying the amounts and dates of maturity of each; also the making of a trust deed upon the premises to secure said notes and interest, substantially as alleged; that the money was borrowed by appellant for the purpose of completing a building then being erected upon said premises; that it was agreed between appellant and the firm of Knott, Tuttle & Lewis, that the proceeds of the loan should be held by said firm pending the erection of the building; that it be disbursed by them as the building progressed, and that they should retain out of said loan, as commissions, two and one-half per cent over and above the interest reserved on said notes; that said firm disbursed said money for the benefit of appellant, according to the agreement between it and appellant, and the notes and trust deed were afterward and prior to the commencement of this suit, sold for full value to the complainant Blair by said firm; that appellant paid the $2,500 note and interest due thereon to Blair; that Blair is now and was prior to the date of the beginning of

this suit, the legal holder and owner of said principal note of $27,500, and the trust deed securing the same; that the trust deed contains the provisions with regard to solicitor's fees hereinabove set out, and that the sum of $1,000 is a reasonable fee and charge, and the usual and customary amount charged for services such as those necessarily performed and to be performed in this proceeding by the solicitor for complainants, and that that sum is due the complainants for the fee of their solicitor under the provisions of said trust deed; that there is due from appellant to complainant Blair upon said note, including interest, the total sum of $32,105.26, and the further sum of $1,000 for said solicitor's fee, and that Blair was entitled to a lien upon said premises for the payment of said sums.

The decree further finds that there is due to the defendants, Knott and Lewis, from appellant, the sum of $1,518.28 for principal and interest on the notes and under the terms of the trust deed prescribed in the answer of Knott and Lewis, with interest at five per cent from the date of the master's report, October 28, 1898, and the further sum of $100 as a solicitor's fee under the terms of that trust deed, for which amounts said Knott and Lewis had a lien upon said premises, subject to the lien of said Blair.

The decree directs a sale, in default of payment of the several amounts found due, of the premises in question, and a distribution of the proceeds in accordance with the liens found by the court. From this decree the appeal herein is taken.

MANNING & COLE, attorneys for appellant.

The effect of contracting for or reserving usurious interest, whether by verbal or written contract, is the forfeiture of all the interest. Stein v. Goldsmith, 44 Ill. App. 108; Harris v. Bressler, 119 Ill. 467; Snyder v. Griswold, 37 Ill. 216; Fowler v. Equitable Trust Co., 141 U. S. 384; Payne v. Newcomb, 100 Ill. 611; Reinback v. Crabtree, 77 Ill. 182; Leonard v. Patton, 106 Ill. 99; Peddicord v. Connard, 85 Ill. 102.

Where the original transaction is tainted with usury, a subsequent change in its form, as by the substitution of new securities between parties cognizant of the usury, will not purge it of the taint. Hunter v. Hatch, 45 Ill. 178; Nickerson v. Babcock, 23 Ill. 561; Harris v. Bressler, 119 Ill. 467; Stein v. Goldsmith, 44 Ill. App. 108; House v. Davis, 60 Ill. 370; Perley on Interest, p. 260; Cross v. Mann, 53 Vt. 501; 27 Am. & Eng. Enc. of Law, 967, 968, and cases cited; Vickery v. Dickson, 35 Barb. 96; Schutt v. Evans, 109 Penn. St. 625; Stanton v. Demerritt, 122 Mass. 495; Nelson v. Hurford, 11 Neb. 465; Exeter Nat. Bank v. Orchard, 39 Neb. 485; Taylor v. Morris, 7 C. E. Green, 606; Boyd v. Engelbrecht, 36 N. J. Eq. 612.

A broker, negotiating loans in good faith from others, may charge the borrower commission without rendering the loan at full rate usurious. But he may not make such charge when he himself advances the money loaned for the purpose of afterward selling the note and mortgage given him. Sanford v. Kane, 133 Ill. 199; Scott v. Magloughlin, 133 Ill. 35; Olds v. Cummings, 31 Ill. 188; McCormick v. Buehler, 67 Ill. App. 73; Dreyer v. Goldy, 62 Ill. App. 347.

JOHN F. HOLLAND, attorney for appellee Blair.

WILSON, MOORE & McILVAINE, attorneys for appellees Knott and Lewis.

A debtor on settlement may, if he chooses, allow interest on annual interest due and unpaid, and this will not render the transaction illegal. Haworth v. Huling, 87 Ill. 23; Thayer v. Star Mining Co., 105 Ill. 540 at 553.

If the debtor acquiesces in the demand for interest on overdue interest and pays it, this will not affect other notes of the same series remaining unpaid. Telford v. Garrels, 132 Ill. 550.

The delay in paying over the money not being the fault of the lender, and not being caused for the purpose of getting more than the lawful rate of interest, can not be made the grounds for inflicting the penalty of usury. Waterman v. Baldwin, trustee, 68 Ia. 256, 262; Bevier v. Covell, 87 N. Y. 50; Tyler on Usury, pp. 263, 264.

In order to constitute usury there must be a corrupt intent to take more than the legal rate for the use of the money loaned.   This is a very important ingredient to constitute usury, and there can be no usury in any transaction in which the parties did not intend to do the thing forbidden by law.   The authorities are uniform upon this point. It is the essence of a usurious transaction that there shall be an unlawful and corrupt intent on the part of the lender to take illegal interest; in other words there must be an intention knowingly to contract for or take usurious interest.   Tyler on " Usury " 103.

" An unlawful and corrupt intent is the very essence of a usurious transaction."   Chief Justice Craig in Boylston v. Bain, 90 Ill. 282–285.

The facts constituting the usury must be pleaded, and the defense must be proved as alleged, by a clear preponderance of evidence.   Frank v. Morris, 57 Ill. 138; Kihlholz v. Wolf, 103 Ill. 362; Haskins v. Cole, 34 Ill. App. 541; Mosier v. Norton, 83 Ill. 519; Boylston v. Bain, 90 Ill. 283; Goodwin v. Bishop, 145 Ill. 421; Sherman v. Blackman, 24 Ill. 347.

Justice Scott says in Mosier v. Norton, *supra*, at page 521:

" Such a defense (usury) is in the nature of a penal action; and not only is great strictness required in the pleading, but the contract must be proved as alleged by a clear preponderance of the evidence."

" The burden of proving usury is always on the party who alleges it, and it must be established by a strong and clear preponderance of evidence.   If, upon the whole case, the evidence is as consistent with the absence as with the presence of usury, the party alleging it has failed in his proof.   The courts will never infer usury if the opposite conclusion can reasonably and fairly be arrived at.   It has been held that the plea of usury must fail where the only evidence is the testimony of the borrower and lender, who squarely contradict each other."   27 Am. & Eng. Enc. Law, 1045.

A separate transaction between the same parties which is usurious does not affect a prior transaction which was

free from usury. Jackson v. May, 28 Ill. App. 305; Riddle v. Rosenfeld, 103 Ill. 600; Polen v. Palmer, 53 Ill. App. 223.

Usurious agreements and acts of the original parties to a note made or performed after they had parted with the note for value, such as withholding part of the original consideration which had not been paid, can not affect the note with usury in the hands of a purchaser, who was not a party to their agreements or acts. Seymour Op. Ho. Co. v. Thurston, 45 S. W. Rep. 815. (Tex. Civ. App.)

Where one of two loans is usurious, the other is not affected merely because they were made at or about the same time and secured by the same mortgage. If the loans are in fact separate and independent, they will be so treated in regard to usury. Jackson v. May, 28 Ill. App. 305.

Usurious interest paid on one series of notes can not be deducted in a suit upon a later series of notes given by one who was an accommodation indorser on the first. Macunzie Sav. Bk. v. Huttenstein, 89 Pa. St. 328.

Nor can usurious interest paid on one note be deducted from another note of the same series. Maher's Appeal, 91 Pa. St. 516.

Usury once paid can not be recovered back. Hadden v. Innes, 24 Ill. 382; Mason v. Pierce, 142 Ill. 331.

MR. JUSTICE WINDES delivered the opinion of the court.

The principal defense made by appellant and now insisted upon in this court, is that all the dealings between him and the appellees constituted one continuous transaction, the whole of which is tainted by usury, and therefore that neither the appellee Blair nor Knott and Lewis are entitled to recover anything from him by way of interest, but that because of the usurious nature of the whole transaction they forfeited all claim to interest, and are only entitled to recover the balance due upon the respective notes held by them after deducting from the principal thereof the several payments made by way of commissions, attorney's fees and interest, as well as for insurance which appellant claims was wrongfully paid out of the proceeds of the original loan of $30,000.

Bishopp v. Blair.

Appellant also claims that the court erred in the allowance of $1,000 to complainant Blair, and to the defendants, Knott and Lewis, of $100 for solicitor's fees; also that the evidence shows that the complainant Blair was not the legal owner and holder of the note of $27,500, at the time of the filing of the bill, but that the same was owned by one Borland, and that the court erred in not dismissing the bill because said Borland was not made a party.

Upon the theory that all the dealings between appellant and the firm of Knott, Tuttle & Lewis and Knott, Lewis & Co. constituted one transaction, was it usurious?

In order to sustain the charge of usury, the statute with reference thereto being highly penal in its nature, the evidence to support it must be satisfactory, and clearly establish it. Mosier v. Norton, 83 Ill. 519; Kihlholz v. Wolf, 103 Ill. 362; Goodwin v. Bishop, 145 Ill. 421; Stanley v. Trust & S. Bk., 165 Ill. 301.

The statute (Hurd's, 1899, Ch. 74, Sec. 6) provides, viz.:

" If any person or corporation in this State shall contract to receive a greater rate of interest or discount than seven (7) per cent, upon any contract, verbal or written, such person or corporation shall forfeit the whole of said interest so contracted to be received, and shall be entitled only to receive the principal sum due to such person or corporation."

It will be noted that in order to establish a violation of the statute there must have been a contract to receive a greater rate of interest than seven per cent upon any contract, verbal or written.

The evidence shows that under the application for the first loan, the contract was to pay interest at six per cent per annum for five years on $27,500, and at the same rate for two years on $2,500, making an aggregate of interest for the whole term of $8,550, and a further sum by way of commissions at two and a half per cent on the total amount of the loan, or $750. On the second loan there was an agreement to pay two and a half per cent commissions, or $250, and on its renewal $80 commissions. There was also deducted from the first loan, $67.50 for insurance, which was

not actually paid, and $87.50 for a guaranty policy. All these amounts aggregate $9,785, which is $190 less than seven per cent on the loan of $30,000 for the time which the respective notes aggregating that amount run. The loan of $5,000 and its renewal bore interest at the rate of seven per cent per annum, and it will thus be seen that by taking all the transactions as one, there was no contract which could be said to be usurious by its terms. In other words, the whole amount agreed to be reserved by Knott, Tuttle & Lewis and Knott, Lewis & Co., by way of commissions, attorney's fees, etc., including interest, did not exceed seven per cent per annum for the terms which the several loans were to run.

But it is claimed by appellant that there was an agreement between him and the appellee Knott, that he, appellant, was not to pay any interest upon the $30,000 loan until he actually received the money on such loan, which was to be paid from time to time as required for the construction of the building. On this point there is a conflict in the evidence as between appellant and the witness Knott, the only witnesses on this subject, and we can not say that the finding of the chancellor that there was no usury is manifestly against the evidence.

The master finds, and the evidence supports the finding, that the $30,000 loan was paid to appellant for his account and as by him authorized in various amounts from time to time from the date of the loan up to May 24, 1892, when the last payment was made, and that the money was paid as the building progressed in construction, and that there was no usury in the notes and trust deed securing the $30,000. And in this connection it may be observed that, as said by Mr. Justice Craig in Boylston v. Bain, 90 Ill. 285, "An unlawful and corrupt intent is the very essence of a usurious transaction." The fact that there was a delay of some six months between the date when the notes and trust deed were made and the last payment of money on the loan to appellant, would not necessarily make the transaction usurious, unless it appeared from the proof (and it

does not) that this delay was intended as a cover for usury. That was a question to be determined by the master and the court from the evidence, which we have seen sustains the finding against usury.

In Tyler on Usury, Ch. 19, p. 255, *et seq.*, the learned author has collected and reviewed numerous cases in which the courts have held that contracts were not usurious, among others (pp. 261–267) that of mortgages where interest was charged from the date of the mortgage, though the money was not actually paid over to the borrower until a time subsequent to that date. The cases hold that it is a question of intention of the parties from the evidence in each case. To a like effect is the case of Waterman v. Baldwin, 68 Ia. 262, in which it was held that the facts shown made the transaction in appearance usurious, but because there was an absence of proof showing a "corrupt agreement on the part of any one to give or accept more than legal interest," the court would not presume such an agreement.

In Bevier v. Covell, 87 N. Y. 50-5, where the whole amount of a loan was held by the agent of the lender for nearly six months, pending judicial proceedings to perfect title, and the borrower agreed to pay interest for this period, which but for the intent of the parties rendered the transaction usurious, the court held there was no usury because of the absence of proof of a corrupt intent.

The claim that it was error to allow complainant Blair $1,000 for his solicitor's fees, is not, in our opinion, tenable, because, as we have seen, the trust deed securing the notes held by appellee Blair provides for the allowance of reasonable solicitor's fees in case of foreclosure; and the master found, which finding was approved by the chancellor, that the sum of $1,000 was a reasonable fee, and the usual and customary amount paid to solicitors in Cook county, Illinois, for services such as those necessarily performed and to be performed on behalf of the complainant. The evidence on this point is somewhat conflicting, but when it is all considered in the light of our own experience in such

matters, we can not say that it fails to sustain the finding of the master and court. Cohn v. Northwestern Mut. Life Ins. Co., 185 Ill. 340, and case cited.

The claim that moneys deducted from the loan to pay insurance was not done by authority of appellant, is not sustained by the evidence. As we have seen, the trust deed provides that appellant should pay the insurance upon the buildings, and in case of his failure so to do, then that the trustee or the holder of the notes might, at his option, procure the insurance, and all moneys so paid for such purpose were made so much additional indebtedness secured by the trust deed. There is no claim but that the insurance was procured and paid for by the trustee, except as to the sum of $67.50, which amount was allowed by the chancellor under the third exception of appellant to the master's report.

There was, in our opinion, no error in the refusal of the chancellor to dismiss the bill because Harriet B. Borland was not made a party thereto. There is evidence in the record tending to show that she was the owner of appellant's note of $27,500, and that the complainant Blair was simply her agent in its purchase; but on the other hand, there is evidence that Blair was the legal owner and holder of the note. The note itself as offered in evidence is indorsed in blank by the appellant; and another indorsement, " Pay to Merchants' National Bank, Chicago, or order—H. B. Borland," appears to have been stricken out by lines drawn through such indorsement; and it appears that the note came to the possession of complainant's solicitor from Blair. We think the evidence sufficient to sustain the decree that at and prior to the beginning of the suit said Blair was the legal owner and holder of this note and the trust deed securing it.

Upon petition for a rehearing by appellees Knott · and Lewis, we have again considered the questions involved in the record so far as they affect these appellees, and have reached the same conclusion, but have modified our opinion because of a misapprehension on our part as to the exact condition of the record.

Among other findings made by the master are the following:

"I further find that on the 10th day of May, 1892, the defendant, Weller D. Bishopp, executed his two promissory notes, each for the sum of twenty-five hundred ($2,500) dollars, payable to the order of himself, and by him indorsed in blank, due in twelve and eighteen months after date thereof, with interest at the rate of seven per cent per annum, the several interest installments being evidenced by seven interest notes or coupons, each for the sum of eighty-seven dollars and fifty cents ($87.50), executed by the same party. That to secure the payment of said notes and the interest thereon, the said defendant, Weller D. Bishopp (a widower), executed his trust deed, conveying to Henry A. Knott, as trustee, the premises described in the bill of complaint herein, together with other property, not now in question."

The master also found that this last named trust deed and notes were delivered to Knott, Tuttle & Lewis, who continued to be owners and holders thereof until they were canceled and paid on November 20, 1894, when appellant executed new notes for the sum of $4,000, which represented the balance due upon said two $2,500 notes; that $1,500 of the $4,000 represented in said notes dated November 20, 1894, was secured by a trust deed on premises not now in question; that appellant paid a commission of $250 to Knott, Tuttle & Lewis on the $5,000 loan and also a commission of $80 to Knott, Lewis & Co. upon the $4,000 loan; that the $30,000 and $5,000 loans were separate and distinct transactions, and in nowise affected each other, and that the "$5,000 and the $4,000 loans were both usurious, for the reason that the interest reserved was for the full legal rate, which, added to the commissions charged and which must be regarded as so much additional interest, makes the interest rate greater than that allowed by statute."

The master, however, concluded that inasmuch as Knott, Lewis & Co., the holders of the $4,000 paper, was a different firm from Knott, Tuttle & Lewis, although the Knott & Lewis in each of the firms were the same, the firms must in

law and in fact be regarded as different firms, and because the property securing the $4,000 loan was in part different from that securing the $5,000 loan, they were separate and distinct transactions, and the appellant should not be credited with interest and commissions on the $5,000 loan, because that was effectually ended and determined and a distinct transaction from the $4,000 loan. The master, therefore, only charged Knott and Lewis with the commissions and interest paid by appellant on the $4,000 loan. It is claimed by counsel for appellees that there is no evidence in the record to show that the $5,000 loan was usurious, but that all evidence in this regard was refused by the master on objection, and there is nothing left to sustain the master's finding, and the appellant's contention that this loan was usurious. The record shows that the evidence in question was ruled out by the master, but the decree of the court, as we have seen, recites that the cause was heard not only upon the pleadings, the master's report and exceptions thereto, but " proofs and exhibits introduced in evidence before the master." The proofs and exhibits introduced before the master show that this loan was usurious, because the notes evidencing the loan bore interest at seven per cent per annum, and appellant paid, in addition thereto, $250 commissions to Knott, Tuttle & Lewis, who made the loan and were the owners of the notes. The findings of fact of the master are full, show the usurious nature of this transaction, and are evidently based upon the excluded evidence, without which they are not justified. The evidence also shows that the $4,000 loan was a renewal of the $5,000 loan, after the payment of $1,000 thereon by appellant. No exception was taken by appellees Knott and Lewis to the findings of the master of the facts on which he bases his conclusion that the $5,000 loan was usurious, their exceptions being confined solely to the $4,000 loan, which was a renewal of the $5,000 loan; and under the settled practice in this and the Supreme Court, they must be concluded by such findings. Besides, we think the statement in the decree in effect sets aside the ruling of the master exclud-

Bishopp v. Blair.

ing the evidence which shows the usury of the $5,000 loan. The decree says the case was heard upon proofs and exhibits introduced in evidence before the master. The evidence as to this loan was introduced before the master, was objected to, and the objection sustained. The evidence was returned into court, notwithstanding, together with the findings of fact by the master. No objection was made by appellees to such findings before the master or exception before the court, and the chancellor might well have concluded that they acquiesced in the same because of the absence of any objection or exception in that regard, and especially might the chancellor have so concluded in view of the fact that appellant, by his eleventh, fourteenth and eighteenth exceptions, refers to the findings of the master that the $5,000 loan was usurious and objects to the report because the master failed to impose the statutory penalty of usury by charging Knott and Lewis with the payments of interest and commissions made by him on the loan as against the principal thereof. It is said that the recital in the decree refers to evidence received, and can not mean that the court violated the rules of chancery practice and heard evidence in open court not considered by the master. We think the language of the decree is too plain to admit of such a construction, and that it was not error for the court to consider this evidence, which was before the master, though apparently ruled out at the time it was presented. The rule of practice referred to by counsel relates to evidence not introduced before the master and not reported to the court.

It is claimed in the petition for rehearing that the exceptions of Knott and Lewis, which we have seen go only to the $4,000 loan, which was a renewal of a part of the $5,000 loan, are sufficient to challenge the master's findings as to the latter loan. We think not, because an exception must be sufficiently certain to enable the court to know definitely and certainly the matter to which it refers. Thornton v. Com'l Loan Ass'n, 181 Ill. 456, and cases cited; Kinsella v. Cohn, 185 Ill. 208, and cases cited.

We are therefore of opinion that the appellees Knott and Lewis should be charged with all payments by way of commission and interest made to them by appellant on the $5,000 loan, as well as its renewal of $4,000. The evidence shows that the $5,000 loan was reduced by a payment of $1,000 made November 10, 1893, on the principal, and in addition to the credits allowed by the master and the court he should be further credited with all interest upon the $5,000 loan from May 10, 1892, up to the date of its renewal at the rate of seven per cent per annum, as well as the sum of $250 for commissions thereon, retained by Knott, Tuttle & Lewis. The case of Mitchell v. Lyman, 77 Ill. 525, does not in our opinion sustain the claim of counsel for Knott and Lewis, that the $4,000 renewal was not affected by the usurious nature of the original loan, of which it was a renewal. Knott and Lewis took with full notice of, and were partakers in, the usurious $5,000 loan, and in our opinion should be subjected to the penalty of the statute, which deprives them of all interest. .

As we have seen, there is the same provision in the trust deed securing the notes held by Knott and Lewis as to solicitor's fees, that is contained in the trust deed securing the claim of the complainant Blair. The evidence supports the finding of the court and master allowing to Knott and Lewis for the services of their solicitor the sum of $100.

The decree of the Superior Court in favor of the appellee Blair is affirmed, but that part of it in favor of the defendants Knott and Lewis is reversed, with directions to the Superior Court to modify the same in accordance with the views herein expressed.

The appellant will recover one-half his costs in this court from the appellees Knott and Lewis. Affirmed in part and reversed in part with directions.