SAMUEL RICHOLSON

*v.*

M. T. MOLONEY.

195    575
e110a³454

*Opinion filed February 21, 1902—Rehearing denied April 5, 1902.*

1. PLEADING—*effect where defendant stands by special pleas held bad on demurrer, as to their being admissions of record.* The only effect of standing by special pleas which have been held bad on demurrer is to·preserve the question of the sufficiency of the pleas for the determination of a court of review, and they do not stand as admissions of record which the defendant cannot be heard to contradict or explain by any evidence whatever.

2. ASSUMPSIT—*what plaintiff must prove in action for money had and received.* In an action to recover for money had and received by the defendant for the plaintiff's use, the plaintiff must prove that the defendant holds money which *ex æquo et bono* he ought to pay to the plaintiff, the usual test being, does the money, in justice, belong to the plaintiff.

3. ESTOPPEL—*party cannot base an estoppel in pais on an act of which he had no knowledge.* An estoppel *in pais* cannot exist where it appears that the acts claimed to constitute such estoppel were done without the knowledge of the party making the claim and without having the effect of inducing him to act thereon to his prejudice.

*Richolson* v. *Moloney,* 96 Ill. App. 254, affirmed.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of LaSalle county; the Hon. R. W. HILSCHER, Judge, presiding.

This was an action of assumpsit brought by appellant against appellee in the circuit court of LaSalle county. The declaration contained eight counts, seven of them being for money had and received by defendant (appellee) then and there as so much money due the plaintiff (appellant) from the State of Illinois for services rendered, and the eighth count being the consolidated common counts, under which he sought to recover for services rendered to defendant in personal matters. Appellant pleaded the general issue, payment, set-off, and six special pleas,— the third to the eighth pleas, inclusive. The third plea averred that the moneys received by him, as alleged in the declaration, were received by him as Attorney General, for legal expenses of the insurance department of the State, under and by virtue of certain appropriations made by the legislature, and to be expended by the order and under the direction of the Attorney General; and that appellant did not render any services to entitle him to recover from the appellee any part of the money so received by him, as aforesaid. The fourth plea averred services rendered of the value of, to-wit, $100, which were paid for. The seventh plea averred that prior to the receipt of the moneys mentioned in the declaration the defendant advanced and paid out of his personal funds divers sums of money to the plaintiff and other persons for legal expenses of the insurance department, and had become liable to pay divers other sums and divers persons, which exceeded the total amount of all the sums of money mentioned in the declaration, which fact was known to the plaintiff, and that the plaintiff agreed that his name might be used by the defendant as a matter of convenience, and to save the trouble of presenting a multiplicity of bills for the purpose of drawing the appropriations aforesaid, and that no part of said money was due or to be paid to the plaintiff or was received for the plaintiff's use, but that the whole of said moneys were to be used by the defendant. The other special pleas are

like the foregoing, with the exception that they refer the services claimed by appellant to services in relation to building, loan and homestead associations.

There was a demurrer to the special pleas, which was sustained by the court, and the defendant elected to stand by his pleas. The jury found for the defendant on the issues made on the other pleas, and judgment was rendered against the plaintiff for costs, from which judg-ment he appealed to the Appellate Court for the Second District, where the judgment was affirmed. From the judgment of affirmance the plaintiff has appealed to this court.

BENJAMIN F. RICHOLSON, and WILLIAM L. SEELEY, for appellant.

THOMAS A. MORAN, CHARLES J. SCOFIELD, JAMES J. CONWAY, and L. W. BREWER, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

The first error urged here is, that the court below erred in admitting any evidence in regard to the matters claimed to have been admitted and confessed by the six special pleas. It is urged by appellant that the aver-ments in these pleas were binding on the appellee as ad-missions of record, and that appellee could not be heard to contradict or explain these admissions by any evi-dence whatever. Numerous cases are cited to support this contention, but they are not in point and do not ap-ply to the state of the pleadings in this case. It is said in Chitty that "the common doctrine that a demurrer ad-mits the facts stated in the pleading demurred to, must be understood with this qualification: that it is so only on the argument, for it has been held that the statements in a special plea which has been holden bad on demurrer are *not evidence* for the plaintiff on the general issue, al-though the jury are to assess damages as well as to try the case on the general issue." (Chitty's Pl. *662.) These

special pleas were held bad on demurrer, and the act of the defendant in standing by them had no further effect on the trial below. The only effect was to reserve the question of the sufficiency of the pleas for appeal or error. For the purposes of the trial below they were demurred out. The evidence was proper under the general issue.

The plaintiff tried his case on the theory that these pleas admitted the reception by the defendant of the moneys as charged, for the use of the plaintiff, and he gave no evidence in chief of any services rendered by him for the State at the defendant's request, nor of their value. This being an action to recover for money had and received by the defendant to the plaintiff's use, it devolved on the plaintiff to prove that the defendant held money which *ex æquo et bono* he ought to pay to the plaintiff, the usual test being, does the money in justice belong to the plaintiff. (*First Nat. Bank* v. *Gatton,* 172 Ill. 625, and cases there cited.) In order to show that the money which was received by the defendant in justice belongs to him, the plaintiff in this case, it was incumbent on him to prove that he had rendered the services for which he claimed payment and that he had not been paid for them. In order to support his contention that the defendant had received money that belonged to him, he introduced in evidence six vouchers, bills or statements of account, with certificates attached, from the files of the State Auditor's office. Each statement or bill is headed, "State of Illinois, to M. T. Moloney, Attorney General, Dr.," and begins (with one exception): "To moneys contracted for, advanced and paid out by me, under my order and direction, in the discharge of the duties imposed on me by law, on account of the legal expenses of the insurance department." One of the bills begins as follows: "To moneys advanced for legal and incidental expenses incident to the discharge of his duties in relation to the insurance laws of the State." Each

of these bills contains an item for services rendered by Samuel Richolson in attending to insurance cases for the State of Illinois, some of them stating the per diem at $20, others only stating a lump sum, the total amount of these items being $9560. Each bill was certified to, substantially as follows: "I, M. T. Moloney, Attorney General, do hereby certify that the foregoing bill of M. T. Moloney, Attorney General, is correct and is payable from the appropriation for the legal expenses of the insurance department.—M. T. Moloney, Attorney General," and was approved by the Governor. On these certificates appellee received warrants, by which he drew the moneys from the State treasury. Appellant contends appellee is estopped to contradict the statements made by him in these certificates in his official capacity, as Attorney General, under the sanction of his official oath.

The defendant was permitted to state in his evidence, over objection, that he made no contract with the plaintiff for legal services; that the way he came to make out his bills to the State, with items for Richolson's services, was this: that there was a controversy between the Attorney General and the superintendent of insurance as to how the money appropriated for the legal expenses of the insurance department should be drawn out of the State treasury; that the Governor would not approve his (Moloney's) bills unless the superintendent of insurance would certify them; that he (Moloney) had advanced money out of his own pocket for the State of Illinois, and had not been able to get any money on the appropriation for 1893 for a year and a half, and that the superintendent of insurance insisted that "legal expenses" meant attorneys' fees, and nothing else; that after detailing these facts to Richolson, he (Richolson) then said to him, (Moloney,) that in order to obviate everything that had been said by the superintendent of insurance, and in order that he could have no possible excuse, as defendant had paid out the money, he should in the future draw it in the

plaintiff's name, as he was an attorney, and put it in as a per diem, as he saw fit, so as to cover the amounts of money he had expended. On cross-examination the defendant testified that the vouchers and certificates were false in so far as they professed to give a statement of the services rendered by the plaintiff in insurance matters, except as to what he had actually earned. The plaintiff denied that he ever made the suggestions testified about by the defendant, and said he knew nothing about the manner of drawing these moneys at that time, and that there was no contract with him for $20 a day. These questions of controverted fact have been finally settled against appellant, but the testimony is mentioned here as bearing upon the question of estoppel raised by appellant.

An estoppel may be defined, in a general sense, to be a preclusion of a person to deny the truth of a fact which has been admitted or determined under circumstances of solemnity, such as by matter of record or by deed, or which he has, by an act *in pais*, induced another to believe and act upon to his prejudice. (11 Am. & Eng. Ency. of Law,—2d ed.—387; *Hefner* v. *Vandolah*, 57 Ill. 520.) There can be no estoppel *in pais* in this case, as appellant's testimony above quoted shows that he knew nothing about these vouchers and certificates at the time they were made out, and it is not shown that he had ever acted in reliance upon them prior to bringing his action.

Appellant claims that these certificates attached to these bills were made under the sanction of appellee's official oath, and that he is therefore estopped from denying them. Cases arising under deeds or bonds, where others have acquired rights under such deeds or bonds which it would be against equity and good conscience to allow to be disturbed by the parties making such deeds or bonds, cannot control here. No rights have accrued to any third parties under these certificates. The mere recital in these bills that certain sums were due from the

State to the Attorney General for services rendered by appellant would not entitle appellant to recover on them, even if these recitals are certified to under the sanction of an official oath. They are but statements that the State is indebted to the Attorney General for these items, and that these items arose out of the services which are therein stated to have been rendered by appellant; *non constat,* but that these services have already been paid for by the appellee. Most of the bills read, "to moneys contracted for, advanced and paid out." One of them reads, "to moneys advanced." The certificates are that the bill is correct. It does not appear anywhere from the face of these bills whether any of these items are still to be paid by the Attorney General or whether they have all been paid. Appellee admitted in his testimony that appellant had rendered some services to which some of these items might apply, but denied their specific correctness, and claimed that he had settled in full with appellant for his services. Whether these services had been paid or settled for by the Attorney General was a question of fact to be tried by the jury.

There is no error in the instructions given for appellee covering the services rendered to the State for appellant. The instructions refused for appellant on this point all contain the vice that they assume that appellee admitted that he received these moneys for appellant by his six special pleas. There was a direct conflict of evidence as to the terms on which appellant should render services to appellee in matters personal to appellee, and in view of this fact the instructions on that branch of the case were proper. The seventh refused instruction is but an elaboration of the third instruction given for appellant and fully covered by the same.

Finding no error in the record the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*