Edwin A. Potter  et al. v. Fitchburg Steam Engine Co.
et al.

1.  NOVATION—*In Order to Establish, Proof Must be Clear.*—In order to establish a novation the proof must be clear and convincing. The presumption, in the absence of such proof, is that there was no novation.

2.  PLEADINGS—*When They Can be Used as Evidence by Way of Admission.*—Pleadings can be used only against the party whose pleadings they are, as evidence by way of admission made by him, and are open to explanation and rebuttal, unless sworn to with knowledge of the facts.

3.  ESTOPPEL—*What is Necessary to Render an Estoppel in Pais Binding upon a Person.*—An estoppel *in pais*, to be binding upon the party against whom it is claimed, must be established by clear and convincing evidence, and is only sanctioned in order to prevent the perpetration of fraud or to effectuate justice; and it must appear also before it can be invoked that the party seeking its application must have changed his condition or conduct in consequence of statements or declarations made or acts done by the party against whom the estoppel is invoked.

4.  EQUITY PRACTICE—*Matters Not Brought to the Attention of the Master by Objection or Raised by Exception Before Court Are Waived.*— A point which is not raised before the master, by an objection or exception to his report, is considered as waived.

5.  SAME—*Custom of Master in Allowing Counsel to Make Draft of Findings Without Notice to Opposing Counsel Not to be Commended.*— The custom of the master in allowing counsel to make a draft of findings and conclusions without notice to the opposing counsel, is not to be commended.

6.  EQUITY PLEADING—*Matter Relied Upon as a Defense Must be Stated in the Answer.*—As a general rule, any matter relied upon in equity as a defense must be stated in the answer, and it is not sufficient to be availed of as a defense, that it appears in the evidence.

7.  SAME—*Where Estoppel is Relied Upon as a Defense.*—When an estoppel is relied upon in equity as a defense, and it is such that it can be pleaded, it should be directly and precisely alleged, and must be pleaded with particularity and certainty.

**Bill to Foreclose a Trust Deed.**—Appeal from the Superior Court of Cook County; the Hon. ARTHUR H. CHETLAIN, Judge presiding. Heard in this court at the October term, 1902. Reversed and remanded, with directions. Opinion filed December 3, 1903.

**Statement.**—The Equitable Trust Company as trustee, and the appellants Potter, Gormley and Hately as com-

plainants, filed a bill against the Chicago Beach Hotel Company and the appellees, the Northern Trust Company as trustee, Davidson & Sons, a corporation, Fitchburg Steam Engine Co., Whittemore, Tolman, Witters, Milliken, Commercial Loan & Trust Co., and others who have not appeared as appellees in this court, for the purpose of foreclosing a trust deed made by said Hotel Company to said Northern Trust Company as trustee, dated January 5, 1893, to secure an issue of $250,000 of bonds of the Hotel Company, which will be more specifically described later; for the appointment of a receiver of the properties of the Hotel Company who should have power to operate the company's hotel; for an accounting of the number and amount of said bonds, as well as of another issue of bonds made by the Hotel Company, hereafter more specifically described, and for a decree against the Hotel Company to pay the amount due on said first bonds not pledged or deposited, and such part of the amount found due on said first bonds pledged or deposited as security for said second bonds as might be necessary to pay the amount found due on said second bonds outstanding, as well as all amounts advanced for rent, insurance and taxes, with the costs, solicitors' and trustees' fees, and in default of payment that the property of the Hotel Company be sold to satisfy the several amounts found due; also that the affairs of the Hotel Company may be closed and the corporation dissolved, and for general relief.

The bill also contains divers allegations as to matters which will hereinafter be stated in the findings of the master and court. The appellees all answered, but the Hotel Company and the other defendants made default. Issues were made and the cause referred to a master to take proof and report his conclusions, which was done. Objections to the master's report were ordered to stand as exceptions, and the cause heard before the chancellor upon the master's report and exceptions thereto, and upon evidence taken and offered in open court, in the matter of the master's fees for his said report in said cause, which evi-

dence was filed in the Superior Court March 29, 1902. The chancellor overruled certain of the exceptions to the master's report and sustained others in so far as the findings of fact and conclusions of the master were in conflict with the decree which was entered. The Hotel Company and the complainants Potter, Gormley and Hately have appealed from the decree and have assigned joint and several errors. The Hotel Company has also assigned separate errors.

The master in his report, among others not necessary to be stated, made the following findings of fact in substance, which have a basis in the allegations of the pleadings and are all sustained by the evidence, to wit: March 1, 1892, one Morgan made a lease to Eaton & Chapman, of the premises on which is now situated the Chicago Beach Hotel, for a term of ninety years. The Hotel Company was incorporated with a capital stock of $250,000 in shares of $100 each, for the purpose of operating a hotel and acquiring real estate and erecting buildings for that purpose. Eaton & Chapman assigned said lease to the Hotel Company January 25, 1893. January 5, 1893, the Hotel Company executed 250 bonds of $1,000 each, payable January 1, 1901, with interest coupons of $30 each, attached to the bonds and payable semi-annually, to secure which the Hotel Company made the trust deed sought to be foreclosed by the bill to the Northern Trust Co. as trustee, which was duly acknowledged, recorded, and is hereinafter called the first trust deed. The Hotel Company, in its business, for value and in good faith, negotiated all said bonds except eight. These bonds will be referred to as the first bonds.

August 11, 1893, the Hotel Company was insolvent, and on that day Vories and others filed a creditor's bill against it in the Circuit Court of Cook County, under which the complainant, the Equitable Trust Company, was appointed receiver, and accepted the appointment.

Immediately thereafter the bondholders and creditors of the Hotel Company, and others interested in it, held various meetings, which resulted in an agreement, of date August

24, 1893, called a re-organization agreement, which will be referred to as the first agreement, and was executed by a large number but not all of the stockholders, bondholders and creditors of the Hotel Company. This agreement provides, among other things not material to be stated, " that all of the said bonds   *   *   * shall be surrendered by the holders thereof, together with the deed of trust securing the same, to the said receiver, or to the other proper representatives of the said corporation, in order that the same   *   *   * may be canceled; and that all of the shares of the capital stock of said corporation shall be turned over and delivered to the said receiver, or to some other proper person to be selected by the committee hereinafter provided for, in order that the said shares of stock may be controlled, used and voted in the common interest of all the undersigned, until the other bonds of said corporation to be issued as hereinafter provided, shall have been paid or redeemed, by, or for, said corporation in accordance with the terms of said bonds, and also that bonds of a number and amount specified aggregating $400,000 par value should be executed and delivered by the Hotel Company, to be divided among those of the subscribers to the agreement who have just claims against the company, in settlement therefor, in an amount equal to such claims respectively; also that the last named bonds, hereinafter called the second bonds, should be due eight years after the date of said agreement, should bear six per cent interest, payable semi-annually, and be secured by trust deed on the property of the company; also that Jacob L. Loose, Anthony Shmitt and John C. Carroll should be and were appointed a committee to represent the interests of the undersigned, severally and collectively, *   *   * and said committee shall also, by themselves, or by an attorney or attorneys of their selection, represent and act for the interests of the undersigned, as the said committee and the said attorney, or attorneys, shall deem proper;" also that this committee should hold in escrow the capital stock of the company, with power to vote the same, and provides for the payment of the expenses of the receiver-

ship, the payment of interest on $75,000 of the company's bonds which had been sold, and the claims, of all the company's creditors, amounting respectively to not more than $500, which the committee were authorized to compromise at fifty cents on the dollar, and lastly, for the retirement or payment of said $400,000 of bonds provided to be issued. It was recited in this agreement also that the company had pledged $167,000 worth of said first bonds at their par value as collateral security for different claims against the company; also that " It is the desire of the undersigned, who compose the stockholders of said company, and the bondholders of said company, and the persons having just claims and demands against said company, that the business of said company, as heretofore carried on, shall be continued for the benefit of all persons concerned in said company."

The master also finds that said Loose, Shmitt and Carroll acted as a re-organization committee under said agreement and selected the Equitable Trust Co. as the depository and medium through which said first bonds should be surrendered and said second bonds should be delivered; that before any of said first bonds were deposited with the Equitable Trust Co., and before it delivered any of said second bonds, said re-organization committee and its various members notified said Trust Company that as it received any of said first bonds, the Trust Company should retain the same until all of said first bonds should be deposited with it, and that it should then, and not until then, cancel said first bonds, and that until all said first bonds should be so deposited said Trust Company should hold those deposited uncanceled, and as collateral security for the second bonds proposed to be issued, and that said instructions were never in any manner revoked or altered; also that $216,000 of said first bonds were deposited by the holders and owners thereof with said Trust Company between October 17 and December 9, 1893, and that none of such depositors at or before the time of their respective deposits of bonds, or by depositing the same, or by any act or deed, intended to surrender the lien of said first

Potter v. Fitchburg Steam Engine Co.

trust deed as security for said first bonds, but that they deposited the same for the purpose of having them held by the Trust Company unsurrendered and unpaid and as collateral security for the said second bonds, and until all said first bonds should be deposited with the Trust Company and canceled, together with said first trust deed; that said Equitable Trust Co. complied with the said directions of the committee, and none of said first bonds deposited with it have in fact been canceled, and it has now in its possession said $216,000 of said first bonds, and holds the same for the benefit of and as security for the owners of such of. said issue of said second bonds as are now outstanding.

The master also finds that the appellee Davidson & Sons signed said first agreement, and at the time of signing owned absolutely or equitably $13,000 of said first bonds, $6,000 of which are now held by the appellee Tolman, who received them in the year 1893 as collateral security for a debt owing to him from Davidson & Sons; that another of said Davidson & Sons' bonds was turned over by it to the appellee, the Commercial Loan & Trust Co., as collateral security for a debt, and the remaining six of said Davidson & Sons' bonds were offered in evidence by the appellee Whittemore; that November 10, 1893, Davidson & Sons notified the Hotel Company, the Trust Company and the re-organization committee that it had elected to withdraw from said first agreement, disavowed the same, and would insist that it was void and Davidson & Sons was not bound thereby.

The master also finds that said second bonds were duly executed in furtherance of said first agreement, authenticated by the Trust Company and disposed of by it in good faith, for value received by the Hotel Company to the amount of $376,000 face value, to the holders of said first bonds and creditors of the Hotel Company, prior to any defaults in the payment of any of them or of interest thereon, and they are now outstanding; that the Trust Company holds the remaining $24,000 face value of said second bonds; that the owners of said first bonds received said second bonds in

exchange at face value, and the persons holding said first bonds as collateral security received in exchange said second bonds only to the amount of their claims respectively, and not to the amount of the security therefor, and that creditors of the Hotel Company received bonds only to the amount of their claims, and that the said second bonds so delivered were delivered in accordance with the provisions of said first agreement and said instructions to the Trust Company by said re-organization committee, which instructions were never in any manner revoked, altered, changed or deviated from; that the Hotel Company duly executed its trust deed to the Equitable Trust Company as trustee to secure said second bonds, thereby conveying said leased property, with the buildings and improvements thereon, and personal property in the buildings, which deed was duly acknowledged and recorded, and will be referred to as the second trust deed.

This trust deed contains, among others, the following recital:

"That the Chicago Beach Hotel Company 'has heretofore issued bonds which it desires to retire, and is also otherwise indebted to divers persons, the payment of which indebtedness it desires to secure,' and a further recital that the Hotel Company ' was, by a resolution properly adopted for the purpose of retiring said bonds, and of securing said indebtedness, authorized to execute and deliver said 660 bonds, aggregating $400,000' and has a covenant that the premises thereby conveyed 'are free from all other and former grants, mortgages, liens, incumbrances, and from taxes, assessments and sales thereof, of any name, kind, nature or description, whatsoever.'"

The master further finds that the Equitable Trust Co. acted as receiver of the Hotel Company until February 20, 1894, when, pursuant to an order of court, it turned over to the Hotel Company all the property held by it as receiver, and thereafter the Hotel Company managed its business until December, 1895; that November 21, 1895, said Morgan gave notice to the Hotel Company and Trust Company of a default in the payment of rent under the said lease aggregating the sum of $7,500, and that if the default con-

tinued thirty days he would declare the lease terminated; that December 13, 1895, the owners of about nine-tenths of said second bonds made a second re-organization agreement, by which the appellants Potter, Gormley and Hately were appointed a committee thereunder, and the legal title of all bonds deposited with that committee, it was thereby provided, should be vested in them, and they were thereby authorized to commence proceedings to foreclose said second trust deed; that under date of January 11, 1895, said Morgan again notified the Hotel Company and Trust Company that default had been made in the provisions of said lease to insure the building and to pay rent amounting to $6,250, and if said default should continue for thirty days he would declare the lease terminated; that the Hotel Company failed to pay rent for September, 1894, and up to December 22, 1895, amounting to $17,083.33, and failed to pay taxes of 1894 and 1896 amounting to $5,664.16, and refused to insure its building, and the cost of such insurance amounted to $8,138.63, in all $30,886.12, and to prevent a forfeiture of the lease said appellants Potter, Gormley and Hately, as a committee, with the knowledge and consent of the Trust Company, paid said rent, taxes and insurance, which, with interest, amounted to $40,899.44, and such advances were proper, reasonable and necessary.

The master also finds that of said first bonds there were outstanding and held as follows : $8,000, being eight bonds which were never issued for value, and held by the Trust Company as custodian, which should be surrendered and canceled; one bond of $1,000, held and owned by appellee Witters, with interest coupons attached, on which there was due $1,379.50; one bond, $1,000, with interest coupons attached, owned by the appellee Commercial Loan & Trust Co., on which there was due $1,379.50; seven bonds, $7,000, with interest coupons attached, owned by appellee Whittemore, on which there was due $9,351.25; six bonds, $6,000, with interest coupons attached, owned by appellee Tolman, on which there was due $8,277; one bond, $1,000, with interest coupons attached, owned by appellee Mulliken, on which

there was due $1,379.50; ten bonds, with interest coupons attached, held and owned by the complainants Potter, Gormley and Hately as collateral security for a note of $5,000, made by the Hotel Company, on which there was due $5,000; the remainder of said first bonds, 216 in number, amounting to $216,000, with interest coupons attached, on which there was due $337,806, and owned by the complainants Potter, Gormley and Hately as said re-organization committee.

The master also finds that the Hotel Company failed to pay divers interest coupons on said first bonds, rent reserved on said lease, and taxes when due, and that such defaults continued for more than ninety days prior to the filing of the bill, and by reason thereof the legal and equitable holders and owners of more than a majority of said first bonds declared the whole principal thereof due and payable, pursuant to the terms of said first trust deed; that after said defaults had continued for more than ninety days said holders and owners requested the Northern Trust Company, as trustee, to foreclose said first trust deed, which it failed to do.

The master then proceeds to find the several proportional amounts due to the several holders of said first bonds to which they were entitled, because of the issuing to them of said second bonds in exchange for said first bonds, which it is unnecessary to state; also that the complainants in the bill, by reason of said defaults of the Hotel Company, after the same had continued more than three months before the bill was filed, elected to and did declare all of said second bonds due and payable; also the several amounts due to the different holders and owners of said second bonds, which need not be stated; also that, by a decree of June 1, 1896, a mechanic's lien was found in favor of appellee Fitchburg Steam Engine Co. against the Hotel Company, subject to the lien of said first bonds, which were then outstanding, on which there was due and unpaid $8,077.14; also that the Northern Trust Co. was entitled to $500 for trustee's fees, and $500 solicitor's fees, pursuant to the terms of said

first trust deed, which was a prior lien to that of said first bonds; also that there was due to the Equitable Trust Co. $500 for its services, and to complainants' solicitors $7,500.

The master then finds that the liens to the several parties for the said respective amounts due to them should be as follows :   First, The Northern Trust Co.; second, complainants' solicitors' fees; third, complainants Potter, Gormley and Hately for rent, insurance and taxes; fourth, complainants Potter, Gormley and Hately on said first bonds, specifying the same as hereinbefore stated; fifth, Fitchburg Steam Engine Co.; sixth, complainants Potter, Gormley and Hately, and other holders of said second bonds, on said second bonds, after credits respectively being made on such amounts by reason of such holders being also holders of said first bonds.   The master recommends that the said first trust deed be foreclosed in default of payment by the Hotel Company of the several amounts so found due and secured by it, and in case of a sale and any deficiency, that the complainants have a deficiency decree and execution therefor.

The decree which was entered by the chancellor makes the same findings of fact substantially as those hereinbefore recited as being made by the master, and in addition finds the total amounts due, with accrued interest, to the several parties in interest up to March 1, 1902, though the decree was entered the following July 15th.

In addition to the said findings of the master the court also finds that the present holders and owners of the said Davidson & Sons' bonds, viz., Tolman, Whittemore and the Commercial Loan & Trust Co., became such before said Davidson & Sons signed said agreement and without any notice thereof, and that said bonds were never surrendered or delivered pursuant to said agreement; also that there was due to the complainants Potter, Gormley and Hately on account of said ten first bonds which they held as collateral security for the Hotel Company's $5,000 note, the sum of $8,068.80; also that none of said first bonds that were owned by Davidson & Sons, three others owned by

said Witters, Mulliken and Whittemore, and said ten owned by Potter, Gormley and Hately were never delivered to said Equitable Trust Co. or to said re-organization committee under said first agreement, and were a subsisting lien under said first trust deed; also that pursuant to said first agreement the directors of the Hotel Company on November 21, 1893, adopted a resolution in which it was recited that it had theretofore issued bonds which it desired to retire, and desired to secure other indebtedness, and authorized the execution of said second trust deed to secure said second bonds, dated September 1, 1893.

The court also finds that the Hotel Company did not acquiesce in the arrangement between said reorganization committee under said first agreement, and the Equitable Trust Co., that the latter company on receiving said first bonds, would hold the same as collateral security for said second bonds until such time as all the first bonds had been surrendered to it; also that the Hotel Company executed and delivered to said Trust Company as additional security for said second bonds, the Hotel Company's note for $150,000, secured by chattel mortgage on all its personal property; also that $216,000 of said second bonds were delivered by said Trust Company in exchange for said first bonds, and the balance of said second bonds, except $24,000 thereof, were delivered to the general creditors of the Hotel Company having claims in excess of $500 against it, pursuant to said first agreement, which was complied with substantially; also finds and sets up certain provisions of said second agreement, not referred to by the master in his report, to which reference will be made in the opinion; also that said second agreement was signed by holders of $364,000 in amount of said second bonds, and that the said second bonds now in the hands of the complainants are held by them under said second agreement; also that the Phœnix Furniture Company received from said Trust Company $47,000 of said second bonds and was a party to said second agreement.

The court further finds that pursuant to said second

agreement the Phœnix Furniture Co. filed its bill in the Superior Court in its own behalf and in behalf of all other owners of said second bonds to foreclose said second trust deed and chattel mortgage; which bill was maintained by the complainants, Potter, Gormley and Hately, and, among other things, alleges, in substance, " that the Hotel Company, on January 5, 1893, executed to Northern Trust Company, as trustee, a certain pretended trust deed pretending to convey said property and to secure a $250,000 bond issue; that of all the bonds secured by said pretended trust deed to the Northern Trust Company there was then apparently outstanding, as the complainant in said bill charged ' on information and belief,' at least an aggregate of $26,000, all of which said Phœnix Furniture Company, in said bill, charged upon information and belief, had either been paid, or the holders thereof had agreed to obligate themselves to cancel and surrender the same; and in the same bill it was also alleged that there was pretendedly owing by said Hotel Company at least the sum of $26,000 secured by said pretended trust deed to Northern Trust Company, and further alleging that said Northern Trust Company trust deed will, upon a final hearing, be ascertained to be of no effect, and the pretended indebtedness to have been thereby secured to have been otherwise paid or discharged; and that said trust deed was not a lien prior to that of the trust deed to the Equitable Trust Company, and was a mere cloud, and as such should be removed and discharged; " also that the trust deed mentioned in said Phœnix bill as a pretended lien is the same trust deed as that sought to be foreclosed by the bill in this case, and that the $26,000 of said first bonds mentioned therein are the same as those mentioned in the bill in this case; also that a receiver was appointed for the Hotel Company upon the filing of said Phœnix Company bill, who has been maintained in office to the time of the entry of the decree by said complainant bondholders as such committee, and that a decree foreclosing said chattel mortgage was entered in that case, under which a sale was made, and said committee under said second agreement pur-

chased the property described in the chattel mortgage, and the said bill of the Phœnix Company is still pending.

The court also finds that while the committee under said first agreement directed the Equitable Trust Co. on receiving said first bonds to hold the same uncanceled and as collateral security until all said first bonds had been surrendered, " the Chicago Beach Hotel Company was not a party to such an arrangement, and that same was expressly repudiated by the bondholders represented by the complainants Potter, Gormley and Hately herein; in the filing of the Phœnix Furniture Company's bill and the maintenance of the same, and that the filing of the Phœnix Furniture Company bill and the maintenance of the same by the said complainants, Gormley, Hately and Potter, was an affirmative election by them for and on behalf of themselves and the bonds which they represented, and which they had, by the terms of the agreement of December 13, 1895, the authority to represent, to treat the exchange of the bonds of January 5, 1893, for the bonds dated September 1, 1893, as a novation and as a payment and retirement under the terms of the first trust deed of the Chicago Beach Hotel Company of date of September 1, 1893, and the agreement of August 24, 1893, and that they are now estopped from asserting a different position with reference thereto."

The court further finds that said first trust deed is a first lien, after payment of costs of foreclosure, subject to the amount advanced by the complainants Potter, Gormley and Hately for rent, insurance and taxes, with interest at five per cent per annum, for the amounts found due on said twenty-six bonds mentioned in the master's report, ten of which were held by the complainants and sixteen by the appellees Tolman, Whittemore, Milliken, Witters and the Commercial Loan & Trust Co., and subject to these liens and the costs, trustees' and solicitors' fees; that Fitchburg Steam Engine Co. had a lien, as found by the master, subject to all the aforesaid liens, and that there was due to the complainant bondholders on account of said second

Potter v. Fitchburg Steam Engine Co.

issue of bonds to said appellee Mulliken, and to certain unknown owners of said second bonds, the several amounts mentioned in the decree, and decreed that unless payments be made within thirty days from the entry of the decree by the Hotel Company of the different liens, in the order named, that then the real estate described in the bill be sold to pay the same, and the proceeds thereof applied in payment thereof in the order of said liens, and in case of a deficiency that the complainants Potter, Gormley and Hately should be entitled to a decree therefor; also that the $216,000 of said first bonds and $24,000 of said second bonds in the hands of the Equitable Trust Co. are not a lien on said premises, and that the same be and were thereby declared of no validity in so far as the parties to the cause are concerned.

After the hearing of exceptions to the master's report and the decision thereon in favor of appellees, the court heard evidence upon the amount of the master's fees and charges, at the closing of which a motion was made by appellee Tolman to suppress the master's report. This motion was overruled and the fees and charges of the master were fixed at the sum of $1,795, as per an itemized statement thereof appearing in the record, which the court decreed to be a first lien and directed to be paid out of the proceeds of any sale, on which ruling appellees have assigned cross-errors jointly and severally.

MORAN, MAYER & MEYER, attorneys for appellants.

The party asserting the estoppel must plead the same, or he can not have the benefit of an estoppel, even if the facts would otherwise justify it. Hefner v. Vandolah, 57 Ill. 520; People v. Brown, 67 Ill. 435; Salem National Bank v. White, 159 Ill. 136; Winslow v. Cooper, 104 Ill. 235, 239, 240; Kadish v. Bullen, 10 Ill. App. 566; Wright v. Stice, 173 Ill. 571, 580; Mills v. Graves, 38 Ill. 455; Keith v. Lynch, 19 Ill. App. 574; Chandler v. White, 84 Ill. 435, 8, 9; Richolson v. Maloney, 195 Ill. 575, 580; Walls v. Ritter, 180 Ill. 616, 620; Knapp v. Jones, 143 Ill. 375, 382, 383; Christie v. Hale, 46 Ill. 117.

Pleadings in one suit are not admissible in another suit, as conclusive proof of the facts therein alleged, but only as evidence of such facts. Gillespie v. Gillespie, 159 Ill. 84; Syndacker v. Brosse, 51 Ill. 357, 363; Farson v. Gilbert, 85 Ill. App. 364; Blanks v. Klein, 53 Fed. Rep. 436, 438; Hunter v. Hunter, 111 Cal. 261, 266; Washington Ice Co. v. Webster, 68 Me. 449, 464; McLaughlin v. Austin, 104 Mich. 489; Perry v. Simpson, etc., Co., 40 Conn. 313; 1 Wharton on Evid. (3d Ed.), Sec. 838; 11 Amer. & Eng. Ency. of Law (2d Ed.) 449.

A party relying upon an estoppel *in pais*, must plead, with particularity and certainty, the facts constituting the estoppel; otherwise, even though the evidence justifies it, he can not avail himself of the estoppel. Home Ins. Co. of Tex. v. Myer, 93 Ill. 271, 274; Crone v. Crone, 180 Ill. 599, 606; Union Nat. Bank v. Hines, 187 Ill. 109, 114; Johnson v. Johnson, 114 Ill. 611, 622; Maxwell v. Longenecker, 89 Ill. 102.

ASHCRAFT & ASHCRAFT, PAM, CALHOUN & GLENNON, and CHURCH, MCMURDY & SHERMAN, solicitors for appellees; ALBERT E. DACY, of counsel.

MR. JUSTICE WINDES delivered the opinion of the court.

The principal question presented by this appeal is as to whether the appellees, who hold sixteen of said first bonds, and the Fitchburg Steam Engine Co., by virtue of a decree in its favor for a mechanic's lien, have prior liens to that of the appellants Potter, Gormley and Hately, who, as a committee, represent the holders of $216,000, with accrued interest thereon, of said first bonds.

As appears from the statement preceding this opinion, the master found that, subject to the costs, trustees' and solicitors' fees and advances by said Potter, Gormley and Hately for rent, insurance and taxes, as found by his report, the said first bonds to the amount of $242,000, with interest thereon, which includes all the said first bonds except $8,000 that were not issued, were a lien under said first trust deed and superior to the mechanic's lien in favor of

Fitchburg Steam Engine Co., and also superior to the lien of any of said second bonds mentioned in the statement, and that the latter lien was subject to that of Fitchburg Steam Engine Co. Although the chancellor, in the decree entered, found the facts shown by the evidence to be in the main as found by the master, he also found that the Hotel Company did not acquiesce in the arrangement which was found by the master to have been made between the representatives of the holders of said first bonds now held by Potter, Gormley and Hately as a committee, and the Equitable Trust Co., viz., that the latter company on receiving said first bonds, pursuant to said first agreement set out in the statement, would hold the same as collateral security for said second bonds until such time as all the first bonds had been surrendered to it, and that said Trust Company should, until all said first bonds were deposited with it, hold such as should be deposited uncanceled. The court also further found that the Phœnix Furniture Co. filed a bill in the Superior Court which was maintained by the complainants Potter, Gormley and Hately, in which the Furniture Company in substance alleged that said first bonds were pretended bonds, and that said first trust deed, given to secure the same, was a pretended trust deed and not a lien, but a mere cloud, and should be removed and discharged, and that such action on the part of Potter, Gormley and Hately was an election by them to treat the exchange of said first for said second bonds as a novation, and as a payment and retirement of said first bonds, and that they are now estopped from asserting a different position in this case. These findings of the court and its decree based thereon constitute the leading point of difference between the master's report and decree, and the main ground of controversy on this appeal.

That all of said first bonds, except $8,000 thereof, were duly executed and delivered and for value passed to the present holders, and the trust deed securing the same was duly executed, acknowledged and recorded and has never been released, and the said bonds have never been in fact

canceled and are now in the possession of the complainant,
The Equitable Trust Co., is not contested; but it is claimed
by appellees, who are bondholders, that these bonds,
except those held by appellees, were in legal contempla-
tion canceled and paid by their exchange for said second
bonds. In this connection appellees claim that the evi-
dence shows, as held by the chancellor, that there was a
novation, and that the appellants Potter, Gormley and
Hately are estopped by the allegations in the Phœnix
Furniture Co. bill from asserting the claim made by them
in this case, except as to sixteen bonds held by appellees
and ten bonds held by Potter, Gormley and Hately, which
were never surrendered to The Equitable Trust Co.

Up to August 24, 1893, when the first re-organization
agreement referred to in the statement was made, all said
first bonds, except the $8,000 which were never issued, were
a valid and first lien secured by said first trust deed. At
that time the Hotel Company had become insolvent, the
Vories and others creditor's bill had been filed against it,
and The Equitable Trust Co. had been appointed a receiver
of all its property and had accepted the appointment. The
bondholders, creditors and other persons interested in the
affairs of the Hotel Company held meetings prior to August
24, 1893, the result of which was said first agreement, that
was executed by some but not all of the stockholders,
bondholders and creditors of the company, and recites,
among other things, that it was their desire that the busi-
ness of the company should be continued for the benefit
of all persons concerned in the company. This agreement
also provides for a committee to represent the interests of
the signers thereof "severally and collectively," and
empowers such committee to act for the interests of the
signers as it "shall deem proper;" also that all said first
bonds "shall be surrendered" by the holders thereof,
together with the trust deed securing the same, to said
receiver or to the other proper representatives of the cor-
poration, in order that the same "may be canceled;" also
that the capital stock should be turned over to said receiver

Potter v. Fitchburg Steam Engine Co.

or some person to be selected by said committee to be used and voted in the common interests of all the signers until said second bonds thereby provided to be issued should have been "paid or redeemed" according to their terms; also for the issuance of said second bonds and their security by said second trust deed, which should "cover all of the property, real and personal" of the Hotel Company; also that expenditures and payments made by the receiver or other person who should succeed in the control and management of the property should be in a certain order, the second provision being for the payment of interest on such of said first bonds as had been sold, and lastly, for the retirement or payment on account of said second bonds; also that "signatures of ninety-five per cent of the creditors having claims in excess of $500, respectively, shall be necessary to consummate this agreement."

On November 21, 1893, and after Davidson & Sons, who were signers of said first agreement, had given notice of their withdrawal from the agreement, the board of directors of the Hotel Company passed a resolution in which it is recited that the Hotel Company desired to retire said first bonds and to secure the payment of other indebtedness of the company, and for that purpose authorized and directed the execution and delivery of said second bonds. Said second bonds on their face appear to be first mortgage bonds, and the second trust deed securing the same has a covenant that the property thereby conveyed was "free from all other and former grants, mortgages, liens, incumbrances, and from taxes, assessments and sales thereof, of any name, kind, nature or description whatsoever," etc.

It clearly appears from the evidence that after the execution of said first agreement by some of the signers thereof and before any of said first bonds had been deposited by the holders thereof, the different members of the committee, viz., Loose, Schmitt and Carroll, named therein to represent the signers of the agreement, instructed The Equitable Trust Co., which was selected by the committee as the depository of the bonds, both the first and second, that as

said Trust Company received any of said first bonds it should retain the same until all of said first bonds should be deposited with it, and that the Trust Company should then, and not until then, cancel said first bonds, and that until all of said first bonds should be so deposited the Trust Company should hold those that were deposited uncanceled and as collateral security for said second bonds. These instructions to the Trust Company were never in any manner revoked or altered. None of said first bonds that were deposited with the Trust Company, $216,000 in amount, and being the bonds now owned by the complainants Potter, Gormley and Hately as a committee, were ever in fact canceled. It also appears that the first agreement, after the withdrawal of the signature of Davidson & Sons, which was prior to the authorization of the issuance of the second bonds, was not signed by ninety-five per cent of the creditors of the Hotel Company having claims in excess of $500, and consequently under the terms of the agreement itself it could not be and was not consummated for that reason if for no other. It is true that the second bonds and trust deed securing the same were executed and delivered pursuant to said agreement and the business of the Hotel Company carried on by the receiver until its discharge as such receiver, and thereafter by committees until December, 1895; but we do not regard this as a controlling fact in determining whether said first bonds were paid, redeemed or canceled.

It seems to us clear, from the foregoing recited provisions of the first agreement, the second bonds and trust deed securing the same and the instructions of the said committee to the Trust Company, in connection with the fact that none of the said $216,000 of first bonds were in fact canceled, and the further fact that said committee was to represent the interests of the signers of the agreement, and in so doing was to act as it should deem proper, it was not, as found by the master, intended, when said first bonds were deposited with the Trust Company, to surrender the lien of said first trust deed as security therefor, but that

they were deposited for the purpose of having the same held by the Trust Company unsurrendered and unpaid and as collateral security for said second bonds received in exchange therefor.

Even if, as claimed by the appellees, the evidence does not establish an agreement that the first bonds were to be held by the Trust Company as collateral security for the second bonds, still it is by no means clear that it was the intention of the holders of the first bonds to surrender or cancel them or to take the second bonds in payment thereof, except upon the condition that all of said first bonds should be surrendered and canceled at the same time, and that they should receive in lieu thereof second bonds which should be a first lien upon all the property of the Hotel Company, free and clear of all incumbrances of every kind or nature. This, it is claimed, was not accomplished, because the holders of $26,000 of the first bonds never delivered them to the Trust Company, nor became parties to the said first agreement, nor is there anything in the record from which, in our opinion, it can be, and it is not claimed that the lien of the Fitchburg Steam Engine Co. is subject or can be made subject to the lien of said second bonds. The purposes of the first agreement could not be consummated until all the first bonds were surrendered and canceled and the second bonds made a first lien upon all the Hotel Company's property. Until the purposes of the signers of said first agreement could be consummated according to its terms, it seems manifest, in absence of clear and convincing proof that they had made a different agreement or waived their rights under that agreement, they can not and should not be deprived of their equitable right to the lien which they, without question, had when they signed that agreement.

In order to establish a novation, as was held by the learned chancellor, the proof must be clear and convincing. The presumption, in the absence of such proof, is that there was no novation. Wilhelm v. Schmidt, 84 Ill. 183-7; Darst v. Bates, 51 Ill. 439-45; Roberts v. Doan, 180 Ill.

187–9, and cases cited; Henry v. Caruthers, 196 Ill. 136–43; Cheltenham, etc., Co. v. Gates Iron Works, 124 Ill. 623–7, and cases cited; Hughes v. Mattes, 28 Southern Rep. 1006; Mowry v. Farmers L. & T. Co., 76 Fed. Rep. 38–43, and cases cited; Anthony v. Campbell, 112 Fed. Rep. 212–23; Hercules Iron Works v. Hummer, 49 Ill. App. 598; Bour v. Pinney, 80 Ill. App. 51; Henry v. Caruthers, 95 Ill. App. 582; affirmed, 196 Ill., *supra*.

In the Darst case, *supra*, in which a junior mortgage was given to secure certain notes, a prior mortgage being released in favor of the junior, it was claimed that the notes described in the prior mortgage were discharged. The court say:

"In taking them up, however, other notes were substituted, and it is manifest the debt for which the notes were given, and to secure which the trust was created, was not thereby paid or discharged. The debt still remained, but the form of the notes had changed; but nothing more, so far as the debtors, the creditors, and the holder of the Garret mortgage were concerned. * * * The deed of trust, then, having been given to secure the debt, and it still, in substance, remaining unpaid, the trust will be kept alive to secure its payment. * * * Until the debt is paid, that will stand, as to the parties, unless they do some act for the purpose of releasing the premises from the operation of the trust."

In the Wilhelm case, *supra*, the court had under consideration the question as to what was the effect of the acceptance by a creditor of the negotiable note of a third person which was given for a pre-existing debt, and citing many authorities, said:

"The presumption is that it was not the intention of the parties that it should operate as an immediate and absolute satisfaction and discharge of the debt, and that nothing short of an actual agreement, or some evidence from which a positive inference of discharge can be made, will suffice to produce such effect."

This case is re-affirmed in the Gates Iron Works case, *supra*, in a carefully considered opinion, and the court uses even stronger language when it says that the taking of a

Potter v. Fitchburg Steam Engine Co.

note of a third person for a pre-existing debt is not pay-ment " unless it be expressly agreed to take the note as payment."   To a like effect in principle is the Henry case, *supra,* and also Roberts v. Doan.

In the Hughes case, *supra,* the debtor gave his note for an open account, and it was claimed, though there was no agreement, that it constituted a novation.   He obtained an extension of time on the note, giving a new note without a surrender of the old note.   This was also claimed to be a novation, but the court held that as the obligation itself had not changed, and there being no express agreement that the note, in either case, should be a payment, there was no novation.   The court say :

" Novation is not easily presumed.   To effect it it must appear so evident there can be no doubt but that novation was intended."

In the Mowry case, *supra,* which in its facts is quite sim-ilar to the case at bar, the Circuit Court of Appeals of the U. S., then composed of Woods, Jenkins and Showalter, JJ., the opinion being delivered by Jenkins, J., seems to have carefully considered this question, and say :

" It is manifestly true that it is possible that one holding bonds secured by a prior mortgage can so surrender them in exchange for bonds secured by a subsequent mortgage that he will lose any right to the higher security.   The question must be resolved in each case upon the facts of the particular transaction.   Where a novation is thus sought to be established, it must be shown that the substitution of the new obligation was with design and intent to extinguish the old obligation; and as such an act would, upon its face, appear to be against the interest of the holder of the bond, such intent will not be presumed, but must be clearly estab-lished."

In this regard it seems from the argument of appellees' counsel, the learned chancellor considered the fact that there was no provision in the first agreement nor in the second trust deed, nor in the resolution of the directors of the Hotel Company, authorizing the second bonds and trust deed securing them, by which the first bonds were to be kept alive, of controlling importance in determining whether

there was a novation. We do not, however, so regard it. These documents all show an intention to retire and cancel the first bonds, and at the same time show clearly this was to be done when ninety-five per cent of the creditors joined in the agreement, all said first bonds were surrendered, and the second bonds and trust deed securing them had been made a first lien on all the Hotel Company's property. Neither of these things was done.

Appellees' counsel concede that whether there was a novation or not is a question of intention, and content themselves with the citation of but two cases, viz., First National Bank v. Radford Trust Co., 80 Fed. Rep. 569, and N. Y. S. & T. Co. v. R. R. Co., 102 Fed. Rep. 382, which they claim present similar facts to the case at bar, are conclusive precedents, and should control here. The cases are long and can not be reviewed without unnecessarily extending this opinion. After a careful reading of them we are of opinion that the facts of each case are clearly distinguishable from those in this case, and for that reason the decisions are not conclusive. It is important to note that in the first of these cases, though decided almost a year after the Mowry case, *supra*, no reference is made to it, and Woods, J., who delivered the opinion at *nisi prius* in the second of these cases, was a member of the court that decided the Mowry case, and bases his opinion in part upon the Mowry case, quoting approvingly a part of that opinion, which we have quoted. He says also that the "question (novation) is one of contract or intention, and little aid is to be derived from the cited cases;" also that the bonds seeking priority "were surrendered without condition or reservation, and to treat them as alive would be inequitable."

As we have seen, the chancellor found that the complainants Potter, Gormley and Hately maintained the bill filed by the Phœnix Furniture Co. to foreclose the second trust deed, and by reason of the allegations therein contained, which are set out in the statement preceding this opinion, they were estopped from asserting a different position in

this case from the one taken in that bill, viz., that the first
bonds and the first trust deed were without validity and
should be discharged. Counsel for appellants contend that
the evidence in this case fails to show many elements neces-
sary to establish an estoppel *in pais*, among them being
the elements that none of the appellees have in any way
been deceived by any acts or misrepresentations of the
appellants, or either of them, and that neither of the appel-
lees has changed his conduct or altered his position in any
respect by reason of any act done or anything said by the
appellants, or either of them. This contention, in our
opinion, is sustained by the evidence, and the position is
not directly controverted; but appellees' counsel say that
the authorities relied on by appellants are not applicable
to an " estoppel of record by pleadings " such as appears in
this case, and cite certain authorities which it is claimed
are applicable here. Counsel do not in their argument
make any application of the authorities so cited, and we do
not think from an examination of them that they establish
that an estoppel, such as is here relied on, is different from
the ordinary estoppel *in pais*. In fact appellees' counsel
further argue that the allegations of the Phœnix Co. bill
as to said first bonds " are the strongest kind of evidence
and are binding as admissions " on the appellants Potter,
Gormley and Hately, thus indirectly conceding that the
estoppel claimed is not different from any estoppel *in pais*.
The authorities so relied on by appellees' counsel have
reference to estoppel by pleadings in the same case in
which the estoppel is relied on, and not, as here, pleadings
in a different case, or they are cases in which an adjudica-
tion was had upon the pleading, or the pleading or matter
relied on as an estoppel was sworn to by the party held to
be estopped. Among the cases cited by appellee that show
they are not controlling here, are the following: Watter-
son v. Lyons, 77 Tenn. (9 B. J. Lea) 566; Perkins v. Jones,
62 Ia. 345; Kaehler v. Dobberpuhl, 60 Wis. 256; Sullivan v.
Colby, 71 Fed. Rep. 460; Brooks v. Laurent, 98 Fed. Rep.
647. It is apparent from all these cases that where plead-

ings were involved they could only be used against the party whose pleadings they were, as evidence by way of admission made by him, and were open to explanation and rebuttal, unless sworn to with knowledge of the facts. This is shown also by the following authorities: 1 Wharton on Evid., (2d Ed.), Sec. 838; 11 Am. & Eng. Ency. of Law, (2d Ed.), 449, and cases cited, note 2; Farson v. Gilbert, 85 Ill. App. 364; Snydacker v. Brosse, 51 Ill. 357–63; Hunter v. Hunter, 111 Calif. 261–6; Blanks v. Klein, 53 Fed. Rep. 436–8.

From a careful consideration of the evidence in this record, we think that it fails to show such a state of facts as should estop the appellants Potter, Gormley and Hately. An estoppel such as is here relied on, to be binding upon the party against whom it is claimed, must be established by clear and convincing evidence, and is only sanctioned in order to prevent the perpetration of fraud, or to effectuate justice, and it must appear also before it can be invoked that the party seeking its application must have changed his condition or conduct in consequence of statements or declarations made or acts done by the party against whom the estoppel is invoked. Mills v. Graves, 38 Ill. 455–64; Hefner v. Vandolah, 57 Ill. 520–4; People v. Brown, 67 Ill. 435; Walls v. Ritter, 180 Ill. 616–20, and cases cited; Richolson v. Maloney, 195 Ill. 575–80; Knapp v. Jones, 143 Ill. 375–82; Keith v. Lynch, 19 Ill. App. 574; Seymour v. Richardson, 103 Ill. App. 625–8; Blanks v. Klein, 53 Fed. Rep. 436–8; Hunter v. Hunter, 111 Calif. 261–6.

In the early case of Mills, *supra*, which was a law case, the court, in speaking of estoppel, quotes from Lord Coke as follows:

" That because it concludes a man from alleging the truth, it must be certain, to every intent, and must not be taken by argument or inference. That every estoppel ought to be a precise affirmation of that which creates the estoppel, and not by way of recital."

And the court say:

" It is a well-recognized rule that declarations, which

were not acted upon, can never operate as an estoppel. * * * They are only sanctioned to prevent the perpetration of fraud and to effectuate justice."

In the Hefner case, *supra*, in speaking of the essentials of an estoppel *in pais*, the court say :

" The party estopped must have induced the other party to occupy a position he would not have occupied but for such acts and declarations."

In the Knapp case, *supra*, the court, in speaking of the necessary elements of an equitable estoppel, among other things say :

," There must be deception, and change of conduct in consequence, in order to estop a party from showing the truth."

In the Walls case, *supra*, the Supreme Court, citing many previous decisions, say :

" It is one of the fundamental principles of estoppel *in pais* that it can only be invoked by a person who has relied upon the statements or declarations made to him, and, relying upon them, has changed his condition with reference to the subject-matter of the statements or declarations upon which the estoppel is based."

It is by no means clear from the evidence that appellants Potter, Gormley and Hately knew of or gave any sanction to the allegations of the Phœnix Furniture Co. bill.   Their connection with that suit may be fully explained by the fact that they were interested as to who was to be the receiver under the bill, in preventing a forfeiture of the lease and in a continuance of the Hotel Company's business under the receivership.

There is no evidence that the appellees who are bondholders have in any way changed their condition or conduct in consequence of any of the allegations contained in the Phœnix Furniture Co. bill, nor does it appear that prior to the filing of the bill in this case any of them in any way acted to their detriment, or relied upon the allegations made in the Phœnix Furniture Co. bill, nor does the evidence show that by reason thereof either of them will be in any way defrauded or any injustice done them, but on

the contrary they can and will enjoy every right, legal and equitable, to which they were entitled as holders of said first bonds, and the same is true as to the Fitchburg Steam Engine Co. with regard to its mechanic's lien, the claim of its counsel to the contrary notwithstanding.

Moreover, no question of estoppel was raised before the master, nor by any objection or exception to his report, nor was it in any way set up in any of the pleadings of the appellees, except in the following that appears in the answer of the Fitchburg Steam Engine Co., viz:

" That Northern Trust Company, Equitable Trust Company, and the holders of said first and second bonds have, in various proceedings and pleadings filed by them, admitted and conceded that all of said first bonds were discharged, canceled and paid, except said sixteen bonds, as aforesaid, and having so admitted the same, are now estopped to deny it."

Even if this statement is sufficient as a pleading of estoppel, the matter not being brought to the attention of the master by way of objection to his report, nor specifically raised by any exception before the court, it should be considered as waived. Springer v. Kroeschell, 161 Ill. 358–71; Whalen v. Stephens, 193 Ill. 121–32; Kinsella v. Cahn, 185 Ill. 208; Bishopp v. Blair, 90 Ill. App. 64; Rittenhouse & E. Co. v. Barry, 98 Ill. App. 548.

As a general rule any matter relied upon in equity as a defense must be stated in the answer, and it is not sufficient to be availed of as a defense, although it appears in the evidence. Home Ins. Co. v. Myer, 93 Ill. 271–4; Crone v. Crone, 180 Ill. 599–606, and cases cited.

Especially is this true when an estoppel is relied upon in equity as a defense and it is such that it can be pleaded. It should be directly and precisely alleged and must be pleaded with particularity and certainty. Mills v. Graves, 38 Ill. 455; Maxwell v. Longenecker, 89 Ill. 102; Faris v. Dunn, 7 Bush (Ky.), 276–87; Botna, etc., Bank v. Silver City Bank, 87 Ia. 479–83; Troyer v. Dyar, 102 Ind. 396–9; Dean v. Crall, 98 Mich. 591–3; Central Bank v. Doran, 109 Mo. 40–51; Mabury v. L., etc., Co., 60 Fed. Rep. (C. C. A.), 645–

56; Newhall v. Hatch, 55 L. R. A. 673–87 (Calif.); Cole v. Lafontaine, 84 Ind. 446–8; 8th Am. Enc. P. & Pr. 10, and cases cited.

In the Maxwell case, *supra*, it was held that a plaintiff in assumpsit who relied upon an estoppel must plead it specially.

In the Cole case, *supra*, the Supreme Court of Indiana say:

" A party relying upon an estoppel *in pais* must plead with particularity and certainty the facts constituting the alleged estoppel. It is a defense to be affirmatively pleaded and to be pleaded with certainty, for intendments are not made in its favor."

In the Doran case, *supra*, the Supreme Court of Missouri holds that an estoppel *in pais* must be pleaded in order that advantage may be taken of it on the trial, and say:

" Not only must the estoppel be pleaded, but this must be done with more certainty than is requisite or will suffice in ordinary defenses."

In the Dean case, *supra*, the Supreme Court of Michigan seems to have considered this question very carefully, and held that the rule requiring an estoppel to be pleaded did not apply to actions at law, but say:

" It is a settled rule in Michigan that in equity cases an estoppel *in pais* must be pleaded, where it constitutes the basis of a right to sue and ground of relief, or is relied upon as a defense."

While our Supreme Court does not seem to have passed directly on the question in a chancery case, it seems clearly in accord with the general principle announced in the Illinois cases cited *supra*, viz., that a defense, in order to be availed of, must be stated in the answer; and therefore we are of opinion the estoppel here, in order to be availed of, must be pleaded; and since estoppels, as was said in the Mills case, and in the Keith case, *supra*, are odious, they should be pleaded with certainty and particularity.

We regard the pleading of the Fitchburg Steam Engine Co. as insufficient because it is entirely too general—lacks that particularity and certainty of statement which would

be notice to the appellants of the particulars of the estoppel sought to be relied upon as a defense. It is, however, unnecessary, as we think, to place the decision upon this insufficiency and lack of pleading, since appellees, by not bringing this defense to the attention of the master in any way, nor by raising it specifically by any exception to the report upon the hearing before the chancellor, should not have been permitted to urge it.

Inasmuch, therefore, as there was no intention on the part of any of the holders of the $216,000 of first bonds, nor of the committee under said first agreement representing the same, to cancel the bonds, nor to surrender them and take second bonds in payment, nor any sufficient basis in the evidence to estop appellants Potter, Gormley and Hately, we are of opinion that the learned chancellor erred in rendering the decree he did as to said $216,000 of bonds.

The ten first bonds which were found by the master and the court to be held by the appellants Potter, Gormley and Hately as collateral security for a note of $5,000, executed by the Hotel Company, were properly found to be a lien and secured by said first trust deed, as were also the sixteen bonds held by the appellee bondholders, together with interest thereon. None of these twenty-six bonds was surrendered to the Equitable Trust Co. or exchanged for said second bonds, pursuant to the terms of said first agreement, as were the other $216,000 of said first bonds, but for the reasons heretofore stated, and because the said first trust deed provides for a "ratable payment" of all said first bonds thereby secured, we think the holders thereof are entitled to the same lien and no greater than that of the holders of said $216,000 of first bonds. This lien should, however, be subject, first, to the payment of all costs, including the master's fees, to which reference will be later made; second, the lien of the Northern Trust Co. for $1,000 for its trustee's and solicitors' fees, the Equitable Trust Co. $500 for its services and complainants' solicitors' fees $7,500, and, third, to the amount found due by the master for advances made by appellants Potter, Gormley

and Hately for rent, insurance and taxes, to wit, $40,899.44, and interest thereon at five per cent per annum from July 1, 1901, the date of the master's report.

The claim of appellants that interest at seven per cent should be allowed them on amounts paid for rent, insurance and taxes, is not sustained by the record. The master allowed seven per cent interest on payments for insurance and taxes, and five per cent on payments for rent. They were entitled to no more under the terms of the first trust deed. They are not claiming under the second trust deed, which would entitle them to seven per cent interest on all these advances. From the date of the master's report they are only entitled, under the statute, to five per cent on the amount found by the master.

The allowance of $3,068.80 interest to the appellants Potter, Gormley and Hately as holders of said ten first bonds as collateral security for the $5,000 note of the Hotel Company was, in our opinion, erroneous. After the most diligent examination of the evidence bearing on this item of interest, guided by the arguments of counsel, we are unable to discover any basis for its allowance. No doubt this $5,000 note secured by these ten bonds is confused with another $5,000 note mentioned in the evidence, which was purchased by John C. Carroll of the Chicago National Bank. The latter note, as we read the evidence, the date and terms of which are shown in evidence, is made the basis of this interest allowance, but it is now owned by said Carroll and not by the appellants Potter, Gormley and Hately. There is nothing in the evidence that we can discover which shows the terms of the note for which the said ten bonds held by Potter, Gormley and Hately were collateral security, and therefore no interest on that note should have been allowed.

The finding of the master and chancellor of the amount due the Fitchburg Steam Engine Company, to wit, $8,253.36, is correct, and that company is entitled to a lien by virtue of the decree in its favor for a mechanic's lien, subject, however, to the liens of said first bondholders as above stated, and the other liens prior thereto.

The claims of the holders of said second bonds, as found by the decree, were proper, and their liens were subject to the other liens hereinabove specified; but whatever may be realized by the holders of said $216,000 of first bonds should be credited upon the amounts found due to them as holders of said second bonds.

The appellants Potter, Gormley and Hately, and the appellees who are holders of said first bonds, are entitled to a decree against the Hotel Company that it pay all the aforesaid liens in the order in which they are specified, and in default thereof to a sale of the mortgaged premises, and in case of any deficiency after such sale, to a judgment for the same against the Hotel Company, and execution thereon.

It is urged by appellees on cross-errors that the chancellor erred in overruling the motion of appellee Tolman to suppress and disregard the report of the master in chancery as to his conclusions of law and fact, because it was prepared by one of the solicitors of the defendants, and that it was also error to allow the master $1,635.18 for his services other than taking the testimony in the cause. We think the record presents no error in this regard.

It appears from the evidence taken before the chancellor upon the matter of the master's fees, several weeks after the chancellor had announced his decision upon the merits of the case in favor of the appellees, that one of appellant's solicitors, at the suggestion of the master, though without any intimation from him as to what his report would be, drew up a draft of findings of fact and conclusions therefrom, which was submitted to the master several days before he made his report. The master, however, gave no notice to appellees' solicitors that he had made this suggestion to appellants' counsel, nor did he make any suggestion to appellees' solicitors that he desired any draft of report from them; and it does not appear that they had any knowledge that such a draft of report had been submitted to the master until the time of the hearing before the chancellor as to the master's fees. When the master received this draft of report he considered it for three or

four days, and the report that he made and which was filed in court is substantially the same as that submitted to him by appellant's solicitor. He says he did not make any material changes in it.

The master submitted a detailed statement of his services in the cause, commencing on January 19, 1900, and closing July 5, 1901, which shows continuance of the hearing on twenty-six different days, and hearings on thirteen different occasions. The cause was argued before him two full days, and the master testifies that he took several weeks in the consideration of the pleadings, the testimony and authorities bearing upon the questions presented, and gave three or four days to a consideration of the draft of report after it was submitted by appellant's counsel, and that $2,500 for the services he rendered in the case, considering its importance and magnitude, would not have been unreasonable. His total charge was $1,795, which includes $159.82 for testimony, as to which no question is made. The court also heard the testimony of H. L. Wait, a master in chancery of the Circuit Court of Cook County for more than fifteen years, who testified that the services rendered by the master were reasonably worth at least $1,800. Also an attorney who testified that he was familiar with said matters by his experience of twelve years, said that the usual fee of a master for such services would be $2,500. The chancellor, after consideration of the evidence, criticised the action of the master, but absolved him from all intentional wrongdoing, and stated that there was nothing 'in the case " to reflect upon his integrity in the matter of the preparation and submission of the report," and that from the evidence he considered the charges of the master not unreasonable. He also stated that the case " required before the court some four weeks of argument," and that he spent two days in verifying the authorities and writing an opinion.

We think the course pursued by the master in suggesting to appellants' counsel to make a draft of findings and conclusions, without notice to the opposing counsel, is not

to be commended, notwithstanding there is evidence tending to show that this has been common among masters both in the state and federal courts. The decision of the master should be above all possible suspicion of bias or improper influence, direct or indirect, from counsel in the case. However honest and desirous a master may be of reporting strictly according to the law and evidence, such a course as was here pursued is liable to cause his fairness to be questioned by the unsuccessful party and his counsel. Besides, we think the practice of asking counsel to prepare a draft of report and conclusions is likely to make the report more voluminous than necessary. Its language would naturally be that of the advocate and show the bias and interest of the solicitor, whereas it should state tersely and plainly, though fully, conclusions of fact and law, without any amplification of the theories of counsel or of argument to support the conclusions stated.

We are unable to say, in view of the many facts, questions of law, conflicting interests and the large amounts involved, and of the evidence bearing upon the services of the master, that the chancellor was manifestly wrong in allowing the amount he did to the master. For all that appears in this record the chancellor took into consideration the fact that the draft of report was made by appellant's solicitor and fixed the master's fees accordingly. The finding of the chancellor in this regard is therefore affirmed.

In view of the conclusions stated it is unnecessary to discuss other matters urged by counsel. The decree of the Superior Court is reversed and the cause remanded, and that court is directed to enter a decree foreclosing said first trust deed for the several amounts above stated, for payment of the same in the order hereinabove specified, and that the appellees who are holders of said first bonds, and the Fitchburg Steam Engine Co., pay the costs of this court and the Superior Court in proportion to the amounts of their respective liens.